657 So.2d 794 (1994)
Sammy R. PURVIS
v.
Roberta E. Ramsey PURVIS.
No. 92-KA-1063.
Supreme Court of Mississippi.
March 31, 1994.
Opinion Granting Rehearing April 27, 1995.
*795 Stephen L. Beach, III, Beach Luckett & Ross, Jackson, for appellant.
No brief filed for appellee.
Before PRATHER, P.J., and SULLIVAN and JAMES L. ROBERTS, Jr., JJ.
EN BANC

ON PETITION FOR REHEARING

[Filed April 27, 1995]
SULLIVAN, Justice, for the Court:
During his divorce proceedings, Sammy Purvis filed a pro se motion seeking recusal of the chancellor. When Purvis failed to bring the motion on for hearing, the court did so on its own motion. At the hearing on Sammy Purvis' motion to recuse, wherein *796 Purvis represented himself, Chancellor Clapp read each paragraph of the motion. Paragraph six in the motion for recusal stated that the chancellor did not have the "mental capacity to know right from wrong and [was] in dire need of psychiatric help." Paragraph seven complained that the court "has demonstrated that it does not know how to interpret the law or follow it ..." Paragraph nine concluded that "because the chancellor has no experience in chancery law that [sic] the court system has virtually broke down with the back log of cases," and Purvis requested "that one of the Special Masters be brought in to try to restore some resemblance of justice." Upon reading the motion, the chancellor asked if Purvis had anything to add regarding each allegation. Purvis expanded on his allegations and made the remark that he had "suspicions as to what's going on" because his wife had said "she could get anything she wanted from Roger [Chancellor Clapp]." Purvis also included remarks about having provided the Attorney General's office with information which allegedly prompted an investigation of Chancellor Clapp, and having filed two complaints regarding Chancellor Clapp with the Judicial Performance Commission which would in turn require his recusal from Purvis' divorce proceeding. Finally, Purvis questioned Clapp's ability to preside over domestic matters and expressed his desire for a "veteran judge". Purvis concluded by stating, "I don't think nobody other than Jesus Christ could possibly be fair after the things we have just went over. I don't believe there's a human being that could possibly  which I'm sure this probably insulted you to some extent to be read in front of these people that you weren't with."
The chancellor declined to recuse himself from the case, instead setting a show cause hearing where Purvis would be required to show why he should not be held in contempt of court for the unfounded allegations made against the court and for having "put the Court through this process."
Purvis was represented by counsel at the subsequent show cause hearing. Purvis first brought on for hearing a motion for jury trial. Purvis asked that the chancellor clarify whether the contempt charge was civil or criminal, and repeatedly asked whether the charge was direct or constructive. The chancellor responded that the charge was one of criminal contempt, both direct and constructive. Purvis' motion for a jury trial was denied. The Chancellor also noted that a previous motion for recusal filed by Purvis had come after the Chancellor issued some rulings adverse to Purvis.
Purvis elected to put on no proof at the show cause hearing. The chancellor found Purvis in direct contempt and sentenced him to thirty days in the Rankin County jail and a $100.00 fine. The chancellor explained that after serving ten days of his sentence and payment of his fine, the remaining twenty days of jail time would be suspended so long as he refrained from making threatening phone calls to the chancellor in the future and from committing any further criminal contempt of court.
Purvis' attorney again asked for clarification as to whether Purvis' contempt was direct and constructive. The chancellor first responded that although Purvis was guilty of both types of criminal contempt, his sentence was for only direct criminal contempt. In concluding that Purvis was in direct contempt, the trial judge stated, "Purvis wrongfully attempted to, and intentionally tried to obstruct the proceedings of the court through his motion, through his telephone calls, through his statements at the hearing on the motion, [and] through his intentional ... failure to set the motion." The court entered an order finding Purvis in contempt of court, and it is from this order that Purvis appeals to this Court.
The chancellor's classification of the contempt as criminal is not conclusive on appeal. In re Stewart, 571 F.2d 958, 963 (5th Cir.1978). The purpose for which the court's power is exercised is a determining factor in classifying contempt as either civil or criminal. Common Cause of Mississippi v. Smith, 548 So.2d 412, 415 (Miss. 1989). If the primary purpose is to enforce the rights of private party litigants or to enforce compliance with a court order, the contempt is civil. Id. One may be jailed or fined for civil contempt, however, the contemnor must be *797 relieved of the penalty when he performs the required act. Hinds County Bd. of Supervisors v. Common Cause of Mississippi, 551 So.2d 107, 120 (Miss. 1989). Criminal contempt penalties are designed to punish for past offenses and they do not end when the contemnor has complied with the court order. Smith, 548 So.2d at 415-16.
Conduct directed against the court's dignity and authority is criminal contempt. Lawson v. State, 573 So.2d 684, 686 (Miss. 1990). It involves an act "which tends to bring the court into disrepute or disrespect." Lawson, 573 So.2d at 686 (quoting Cook v. State, 483 So.2d 371, 374 (Miss. 1986). Conduct amounting to criminal contempt must be directed against the court or against a judge acting judicially rather than individually. Culpepper v. State, 516 So.2d 485, 486 (Miss. 1987).
The purpose of the chancellor in assessing a fine of $100.00 and a sentence of thirty days in the County jail was punitive in nature. The chancellor was seeking to punish Purvis for actions that the chancellor concluded were directed against the dignity of the court and calculated to bring the court into disrespect. The penalty was designed to punish Purvis for past disobedience instead of for the purpose of coercing some different course of conduct. The penalty imposed under these circumstances could have only been the result of a charge of criminal contempt.
Normally, the factual findings of the chancellor are affirmed unless manifest error is present and apparent. Caldwell v. Caldwell, 579 So.2d 543, 545 (Miss. 1991). This Court is not bound by the manifest error rule when the appeal involves a conviction of criminal contempt. Instead, this Court proceeds ab initio to determine whether the record proves the appellant guilty of contempt beyond a reasonable doubt. Lamar v. State, 607 So.2d 129, 130 (Miss. 1992); Premeaux v. Smith, 569 So.2d 681, 683-84 (Miss. 1990); see Miss. Code Ann. § 11-51-11 (Supp. 1994) (general statute pertaining to contempt appeals). However, it is not necessary to review the record to see if Purvis was guilty beyond a reasonable doubt since this case requires reversal on other procedural grounds.
Purvis first contends that the trial judge improperly classified his conduct as direct criminal contempt instead of constructive contempt. Direct contempt involves words spoken or actions committed in the presence of the court that are calculated to embarrass or prevent the orderly administration of justice. Varvaris v. State, 512 So.2d 886, 887 (Miss. 1987). The direct contemnor may be summarily punished because no evidence other than the court's own knowledge is required as the conduct was committed in the presence of the court. Lamar, 607 So.2d at 130. Direct contempt necessitates an instantaneous response. Varvaris, 512 So.2d at 888. Thus, the distinction between direct and constructive contempt is important in determining the necessary procedural prerequisites to finding an individual in contempt.
While the Chancellor in the case sub judice stated that Purvis was being punished only for his direct criminal contempt, the basis and substance of the court's ruling was founded on constructive criminal contempt. The Chancellor explained that Purvis intentionally tried to obstruct the orderly administration of justice through the filing of a motion to recuse the Chancellor in Purvis' divorce proceeding, through telephone calls, through statements at the hearing on the motion for recusal, and through the intentional failure to set the motion. Constructive contempt involves actions which are committed beyond the presence of the court. Coleman v. State, 482 So.2d 221, 222 (Miss. 1986); see, e.g., Wood v. State, 227 So.2d 288 (Miss. 1969) (concluding that contemptuous language found within pleading filed in pending matter was constructive rather than direct contempt). The court in issuing its decision made reference to a single activity committed in the presence of the court, Purvis' language in the courtroom as he personally argued his motion for recusal. Otherwise, Purvis' actions were committed outside the presence of the court. The court expressly concluded that Purvis was guilty of constructive criminal contempt in addition to direct criminal contempt. The suspension of twenty days of *798 his sentence was based upon Purvis' promise not to engage in other acts classified as constructive contempt. The essence of the trial court's ruling was founded on constructive criminal contempt regardless of what acts the Chancellor said were attributed with the penalty imposed.
This Court will normally favor finding that the contemnor's actions involved constructive contempt when there is a legitimate issue as to whether the contemnor has committed constructive or direct contempt since constructive contempt requires a specification of charges, notice and a hearing. Wood, 227 So.2d at 290. Although Purvis was properly afforded the procedural mandates of a constructive contempt charge, he argues that he was entitled to a trial by jury.
When determining whether a contemnor has the right to a jury trial, the court must look to the maximum sentence possible under the statute, or to the penalty actually imposed if no punishment is provided by statute. McGowan v. State, 258 So.2d 801, 802 (Miss.), cert. denied, 409 U.S. 1006, 93 S.Ct. 430, 34 L.Ed.2d 298 (1972). Contrary to Purvis' argument that Miss. Code Ann. § 99-19-31 sets the potential penalty for constructive contempt at $1,000.00 entitling him to a jury trial, this Court has determined that this statute is not applicable since the ability to punish for criminal contempt is derived from the inherent powers of the court. Melvin v. State, 210 Miss. 132, 148, 48 So.2d 856 (Miss. 1950). Therefore, the actual penalty imposed by the trial court must be the focus.
Purvis received a fine of one hundred dollars ($100.00) and thirty days imprisonment. The maximum penalty allowed by this Court without a jury trial has been six months imprisonment and five hundred dollars ($500.00). McGowan, 258 So.2d at 803. Since Purvis' sentence fell beneath the threshold limit triggering the right to a jury trial, the trial court did not err in denying Purvis' request for a trial by jury on his contempt charge.
Finally, Purvis argues that he was denied due process of law because the show cause proceeding was conducted by the same judge who presided over the divorce proceedings and the related motion for recusal from which the alleged contempt originated. The contempt complained of in the case at hand clearly involved personal attacks on Clapp and his ability to perform his judicial functions. Purvis was clearly within his rights to file a motion to recuse the chancellor, but his motion clearly involved matters personal in nature. Purvis questioned the judge's personal ability to do his job, and accused him of colluding with Purvis' wife in the divorce proceeding. In Varvaris, this Court determined that the judge was not personally involved in the contempt proceedings since the conduct involved a personal attack on the district attorney during the proceedings. Varvaris, 512 So.2d at 888. Varvaris can be easily distinguished on these facts alone since the conduct in the case sub judice was clearly directed at Chancellor Clapp. The language used by Purvis to make these pointed remarks was anything but gentle or kind to the Chancellor.
Direct contempt may be handled by the sitting judge instantly, although it is wise for a judge faced with personal attacks who waits till the end of the proceedings to have another judge take his place. Mayberry v. Pennsylvania, 400 U.S. 455, 463-64, 91 S.Ct. 499, 504, 27 L.Ed.2d 532 (1971). Not only did the judge in the instant case wait till a subsequent date to deal with the alleged contempt complained of during the motion for recusal, the judge based his decision on additional acts which occurred outside of his presence. It is necessary to try the individual by another judge in cases of constructive contempt where the trial judge has substantial personal involvement in the prosecution. Varvaris, 512 So.2d at 888. Where a course of action is aggravated by personal attacks, another judge should be asked to sit at the contempt hearing. Mayberry, 400 U.S. at 464, 91 S.Ct. at 504. Although not every attack on a judge disqualifies him from sitting, common sense leads to the conclusion that it was unlikely that the chancellor in Purvis' case maintained the detachment necessary for making an unbiased and fair decision. Furthermore, there can be no argument that it would have been impractical to *799 have designated a different judge to sit at the contempt hearing as the contempt charge was set and heard at a later date.
Purvis was charged with a course of conduct that was committed, for the most part, outside the presence of the court. His conduct associated with the divorce proceedings involved the judge personally, and the judge chose to set a show cause hearing for contempt charges at a date subsequent to the alleged contemptuous conduct. Accordingly, due process required that another judge sit at the show cause hearing for contempt. For these reasons, the judgment below should be reversed and remanded.
REVERSED AND REMANDED.
HAWKINS, C.J., DAN M. LEE and PRATHER, P.JJ., and PITTMAN, BANKS, McRAE and JAMES L. ROBERTS, Jr., JJ., concur.
SMITH, J., not participating.