## IN THE SUPREME COURT OF MISSISSIPPI
### NO. 97-CA-00378-SCT

*PAUL WALLS*

*v.*

*LESTER SPELL, COMMISSIONER OF*
*AGRICULTURE & COMMERCE*

### ON MOTION FOR REHEARING

| | |
|---|---|
| DATE OF JUDGMENT: | 02/28/97 |
| TRIAL JUDGE: | HON. PAT H. WATTS, JR. |
| COURT FROM WHICH APPEALED: | JACKSON COUNTY CHANCERY COURT |
| ATTORNEYS FOR APPELLANT: | GEORGE S. SHADDOCK |
| | JIM DAVIS HULL |
| ATTORNEYS FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: ONETTA WHITLEY |
| | JULIE McLEMORE |
| NATURE OF THE CASE: | CIVIL - OTHER |
| DISPOSITION: | REVERSED AND REMANDED -10/08/98 |
| MOTION FOR REHEARING FILED: | 8/04/98 |
| MANDATE ISSUED: | 10/15/98 |

### EN BANC.

### WALLER, JUSTICE, FOR THE COURT:

¶1. The motion for rehearing is granted. The original opinion in this case is withdrawn and this opinion is substituted therefor.

### INTRODUCTION

¶2. On May 28, 1996, Dr. Lester Spell, Jr., Commissioner of the Mississippi Department of Agriculture and Commerce, Appellee herein, filed a complaint in the Chancery Court of Jackson County, Mississippi, against the Appellant herein, Paul Walls, Sr. In his complaint, Dr. Spell ("State") alleged that Paul Walls ("Walls") was engaged in entomological work in violation of laws of the State

of Mississippi. Specifically, Walls did not have a license to spray pesticides in residential homes.[(1)] The court issued a temporary injunction prohibiting Walls from spraying residential homes until a hearing could be held concerning a permanent injunction. Subsequently, the State filed a Petition for Citation of Contempt alleging that Walls was in violation of the temporary injunction. At a full hearing on February 27, 1997, the court found Walls guilty on three (3) counts of criminal contempt and sentenced him to six (6) months in jail to be served consecutively, and a $500.00 fine on each count. Walls appealed to this Court assigning the following as error:

> **I. THE TRIAL COURT ERRED IN NOT GRANTING A CONTINUANCE PENDING THE COMPLETION OF THE FEDERAL CRIMINAL MATTER.**
>
> **II. THE TRIAL JUDGE ERRED IN NOT RECUSING HIMSELF.**
>
> **III. THE TRIAL COURT ERRED IN DENYING DEFENDANT'S MOTION FOR A JURY TRIAL.**
>
> **IV. THE EVIDENCE FAILED TO PROVE ACTUAL AND KNOWING CRIMINAL CONTEMPT AND INTENT ON THE PART OF THE APPELLANT.**
>
> **V. THE JUDGMENT OF CRIMINAL CONTEMPT IS CONTRARY TO LAW AND REPRESENTS A VIOLATION OF THE DEFENDANT'S FIFTH AMENDMENT RIGHTS.**

¶3. This Court holds that Walls should have been afforded a jury trial. Thus, we reverse and remand his conviction of contempt for proceedings not inconsistent with the following opinion.

## STATEMENT OF THE CASE AND PROCEDURAL HISTORY

¶4. This action began when the Department of Agriculture filed a complaint against Walls for illegal pesticide spraying. The chancellor issued a preliminary injunction on June 11, 1996, which prohibited Walls from engaging in residential fumigation until a hearing could be held. A hearing on the permanent injunction was set for October 8, 1996.

¶5. Before the hearing was held, the State and Walls, who was represented by counsel, entered into an agreed permanent injunction. The permanent injunction prohibited Walls from engaging in entomological spraying for a fee, from giving advice or prescriptions concerning pest control for a fee, and from applying pesticides in the State of Mississippi, except as allowed under his private applicator's license. On November 12, 1996, the State filed a Petition for Citation of Contempt against Walls alleging that Walls had violated the agreed permanent injunction on six occasions. Subsequently, the State amended the petition to include three counts instead of the original six counts.

¶6. Walls was represented at the contempt hearing by his current counsel. Walls' new counsel moved for a continuance until the completion of Walls' federal criminal matter. The chancellor refused to allow a continuance pending completion of the federal matter, but did grant Walls a continuance to allow his new attorneys time to prepare for the contempt hearing. The hearing was reset for January 29, 1997.

¶7. On January 10, 1997, the court reconvened for a motion hearing. Walls moved for a continuance again because of a possible conflict with his federal criminal trial. The chancellor granted Walls a continuance and reset the contempt hearing for January 31, 1997. Walls also moved for the chancellor to recuse himself based on the possibility that the chancellor may be called as a witness in Walls' federal criminal matter, and the fact that the chancellor's son was the county prosecutor handling the prosecution of Walls in state court. The chancellor denied the motion for recusal. Walls also moved for a jury trial, as contemplated under the statute, asserting that the criminal contempt proceedings were serious in nature and not a petty offense. However, the chancellor denied Walls' motion for a jury trial.

¶8. On January 22, 1997, the court convened to hear Walls' Motion for a Continuance. Walls requested a continuance to allow him time to take a hearing test in order to determine whether the court should obtain hearing device so that Walls would be able to hear the trial proceedings. The court granted the continuance and reset the matter for trial on February 27, 1997. After a bench trial, Walls was found guilty of three counts of contempt and sentenced to six (6) months in jail, with the sentences to run consecutively; and, fined $500.00 on each count. Walls timely filed his notice of appeal to this court.

## DISCUSSION OF THE LAW

### I. THE TRIAL COURT ERRED IN NOT GRANTING A CONTINUANCE PENDING THE COMPLETION OF THE FEDERAL CRIMINAL MATTER.

¶9. Our standard of review for refusal to grant a continuance is well-settled. The decision to grant or deny a continuance is left to the sound discretion of the trial court. *Johnson v. State*, 631 So.2d 185, 189 (Miss.1994)(*citing Wallace v. State*, 607 So.2d 1184, 1190 (Miss.1992); *Morris v. State*, 595 So.2d 840, 844 (Miss.1991); *Fisher v. State*, 532 So.2d 992, 998 (Miss.1988)). Unless manifest injustice appears to have resulted from the denial of the continuance, this Court should not reverse. *Hatcher v. Fleeman*, 617 So.2d 634, 639 (Miss.1993). Miss. Code Ann. § 99-15-29 (1994) states: "A denial of the continuance shall not be ground[s] for reversal unless the supreme court shall be satisfied that injustice resulted therefrom."

¶10. Walls asserts as reasons for granting a continuance that: (1) he had been charged in federal and state court; (2) he had new employment as a security guard; (3) he was doing no spraying; and, (4) the injunction was still in place. In order for this court to reverse for failure to grant a continuance, Walls must show that he has suffered an injustice from being forced to proceed. *Jackson v. State*, 684 So.2d 1213, 1221 (Miss. 1996).

¶11. None of Walls' above arguments establish sufficient prejudice upon which this Court can reverse his conviction. Walls began work as a security guard on approximately February 1 or 2, 1997. Walls fails to explain how this fact entitles him to a continuance. Furthermore, there is no prejudice to Walls. Walls asserts that he was not spraying houses any longer and that the injunction was still in place. The purpose of the hearing was to determine if Walls had violated the court's Agreed Permanent Injunction on three occasions during a two week period in October of 1996, as set out in the State's Amended Petition for Citation of Contempt. Whether Walls was no longer spraying was not an issue in the contempt hearing. The purpose of the hearing was to determine whether Walls had

violated the order issued by the Chancellor.

¶12. Walls argues that his pending state and federal trials entitled him to a continuance in the contempt hearing. Walls asserts that if he was compelled to testify in the contempt hearing, this could amount to a waiver of his privilege against self-incrimination in the latter federal and state criminal trials. In short, it appears that Walls asserts that the chancellor erred in holding the criminal contempt hearing before Walls' federal and criminal trials were completed. He cites no authority for this proposition. The federal trial was held during the last of week of April, 1997, and the state matter has been continued indefinitely. The criminal contempt hearing was held on February 27, 1997.

¶13. Walls argues that the failure to grant a continuance "worked an injustice in his case." In order for this court to reverse, Walls must show that a manifest injustice resulted from denial of continuance. *Lambert v. State*, 654 So.2d 17, 22 (Miss. 1995). "A denial of the continuance shall not be ground for reversal unless the supreme court shall be satisfied that injustice resulted therefrom." Miss. Code Ann.§ 99-15-29 (1994).

¶14. Walls has failed to show any manifest injustice from the denial of the continuance. Walls' federal trial was moved to April, 1997. The state prosecution has been continued indefinitely. Walls' contempt hearing was held prior to both the federal and state actions. At no time during the contempt hearing was Walls compelled to testify. His arguments fail to establish any prejudice or manifest injustice stemming from the denial of the continuance. This issue is without merit.

## II. THE TRIAL JUDGE ERRED IN NOT RECUSING HIMSELF.

¶15. Walls' arguments for recusal are as follows: 1) the chancellor might be called to testify as a witness at the federal trial; and, 2) the chancellor's son was the county attorney in the county where the state criminal charges were pending.

¶16. "This Court reviews a judge's refusal to recuse himself using the manifest error standard." *Bredemeier v. Jackson*, 689 So.2d 770, 774 (Miss. 1997) *(citing Davis v. Neshoba County Gen. Hosp.*, 611 So.2d 904, 905 (Miss. 1992)). The Code of Judicial Conduct requires disqualification of a judge when his or her "impartiality might reasonably be questioned, including but not limited to instances where: (a) he [or she] has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding." Code of Judicial Conduct, Canon 3(C)(1). The test for recusal has been stated as follows: "[W]ould a reasonable person, knowing all the circumstances, harbor doubts about the judge's impartiality?" *Bredemeier*, 689 So.2d at 774 (*citing Frierson v. State*, 606 So.2d 604, 606 (Miss. 1992) and *Rutland v. Pridgen*, 493 So.2d 952, 954 (Miss. 1986)). This Court presumes a judge to be qualified and unbiased. *Turner v. State*, 573 So.2d 657, 678 (Miss. 1990). This presumption must be overcome by evidence producing a "reasonable doubt" about the validity of the presumption. *Id.*

¶17. The personal bias alleged by Walls stems from the fact that the chancellor's son was the county prosecutor and was pursuing criminal charges against Walls. Walls asserts that the trial judge must step down when his personal involvement is shown. This statement is drawn from this Court's decision in *Purvis v. Purvis*, 657 So.2d 794, 798 (Miss. 1994). *Purvis* involved a case where the contemnor questioned the judge's personal ability to do his job and accused the judge of colluding with Purvis' wife in the divorce proceeding. *Purvis*, 657 So.2d at 798. In the case *sub judice*, Walls

was not accused of direct contempt. Walls was charged with constructive contempt, violation of an order of the court. The personal involvement of the judge that was present in *Purvis* is not present in Walls' case.

¶18. Walls' contempt hearing was held on February 27, 1997. At that time, the county prosecution, involving the chancellor's son, had not yet begun. The presumption that the chancellor was qualified and unbiased was still in effect. The chancellor pointed out that his son might have to recuse himself after the chancellor heard Walls' contempt hearing. The State points out that the chancellor's son requested the Attorney General's office to prosecute the state charges. Walls has failed to raise the reasonable doubt necessary to overcome the presumption that the chancellor was qualified and unbiased.

¶19. Walls also asserts that the chancellor should have recused himself because he might have to testify in the federal trial. Apparently, the federal prosecutor was going to use the chancellor's testimony to show that Walls knew the danger of spraying methyl parathion in residential homes. On June 11, 1996, the chancellor entered a preliminary injunction, which Walls signed, that prohibited Walls from doing any spraying of pesticides or giving advice or prescriptions for the control or eradication of pests, rodents, etc. for a fee. The federal prosecutor was going to use the transcript from the hearing on June 11, 1996, to show that Walls knew he was not to spray methyl parathion anymore. Walls asserts that the chancellor should have stepped down because of the possibility that he might be called as a witness against him.

¶20. There is a presumption that the chancellor is qualified and unbiased. *Turner*, 573 So.2d at 678. Walls must raise a reasonable doubt as to the validity of the presumption. *Id.* If the chancellor assumed the role of fact witness, then he has no alternative but to recuse himself. *Collins v. Dixie Transp., Inc.*, 543 So.2d 160, 166 (Miss. 1989).

¶21. At the time of Walls' hearing, the chancellor could not be certain that he would be called as a witness in the federal trial. Thus, any evidence supporting recusal would be speculative at best. Mere speculation is not sufficient to raise a reasonable doubt as to the validity of the presumption that the chancellor was qualified and unbiased. *See Turner*, 573 So.2d at 678. Furthermore, it appears that the chancellor's testimony would consist only of reinforcing what was already in the record. The federal prosecutor wanted to show that Walls had been instructed not to spray at the June 11, 1996, hearing. Based upon the facts known to the chancellor at the time of the contempt, his decision not to recuse himself was correct. This assignment of error is without merit.

### III. THE TRIAL COURT ERRED IN DENYING DEFENDANT'S MOTION FOR A JURY TRIAL.

¶22. On December 26, 1996, Walls filed a motion for a jury trial. Walls argues that the charges of contempt were serious offenses, which entitled him to a jury trial. Walls was convicted of three counts of contempt, sentenced to a total of eighteen (18) months in the county jail and fined a total of $1,500.00. His sentences were to run consecutively. Walls encourages this Court to view his punishment in the aggregate instead of considering each count individually. The State argues that because Walls was not sentenced to more than six (6) months and not fined more than $500.00 dollars on any one count, the offense is considered petty and does not entitle Walls to a jury trial. We find that he was entitled to a trial by jury, and the Chancellor's denial of Walls' motion for same

requires reversal in this case.

¶23. The Sixth Amendment guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed...." U.S. Const. amend. VI; *See also* Miss. Const. art. 3 § 26. The Sixth Amendment and the common law reserve this jury-trial right for prosecutions of serious offenses, and "there is a category of petty crimes or offenses which is not subject to the Sixth Amendment jury trial provision." *Duncan v. Louisiana*, 391 U.S. 145, 159 (1968).

¶24. To determine whether an offense is properly characterized as "petty," courts look at the "objective indications of the seriousness with which society regards the offense." *Frank v. United States*, 395 U.S. 147, 148 (1969). To determine whether an offense is petty, courts consider the maximum penalty attached to the offense. *Lewis v. United States*, 518 U.S. 322, 326 (1996). The maximum penalty set by the legislature is the most relevant criterion with which to assess the character of an offense, because it reveals the legislature's judgment of the severity of the offense. *Id.* An offense carrying a maximum prison term of six months or less is presumed petty, unless the legislature has authorized additional statutory penalties so severe as to indicate that the legislature considered the offense serious. *Blanton v. City of North Las Vegas*, 489 U.S. 538, 543 (1989).

¶25. In Mississippi, there is no maximum penalty for the crime of criminal contempt. *See* Miss. Code Ann. § 11-51-11(4) (Supp. 1997). The statute does provide that "[a] contemnor shall not be entitled to a jury trial **unless** the contemnor requests a jury trial and **unless** the fine exceeds five hundred dollars ($500.00), or the imprisonment exceeds six (6) months." *Id.*

¶26. In determining whether contempt is to be treated as serious or petty for the purpose of determining whether the person cited for contempt has a right to jury trial, this Court should look to the maximum penalty which could be imposed under statute. *McGowan v. State*, 258 So.2d 801, 802 (Miss. 1972). Where the statute provides no maximum punishment, as in Walls' case, we look to the penalty actually imposed as best evidence of the seriousness of the offense. *Id*.

¶27. We have held that a defendant charged with contempt of court has no right to a trial by jury. *Kitchens v. State*, 293 So.2d 815, 816 (Miss. 1974). The offense is petty where the defendant was sentenced to six months and fined $500.00 for constructive contempt. *Hinton v. State*, 222 So.2d 690, 692 (Miss. 1969); *Clark v. State*, 332 So.2d 415 (Miss. 1976). This Court should look to the punishment imposed when determining whether an offense is petty or serious. *Hinton*, 222 So.2d at 692. Recently, we said that where no punishment is provided by statute, the court must look to the penalty actually imposed on the defendant. *Purvis*, 657 So.2d at 798. The maximum penalty allowed by this Court without a jury trial has been six months imprisonment and a five hundred dollar fine. *Id*. *(citing McGowan*, 258 So.2d at 803).

¶28. The United States Supreme Court has rejected the argument that each contempt was a separate offense, and that because the punishment imposed on each count was not greater than six months and $500.00, each contempt was necessarily a petty offense triable without a jury. *Codispoti v. Pennsylvania*, 418 U.S. 506 (1974). Codispoti was convicted, without a jury trial, of seven counts of direct contempt and sentenced to six months in prison on six of the counts and three months on the remaining count. The Court reversed and remanded his conviction because he was tried without a jury. In doing so, the Court noted that, "[i]n terms of the sentence imposed, which was obviously

several times more than six months, each contemnor was tried for what was equivalent to a serious offense and was entitled to a jury trial." *Id* at 517.

¶29. The Court revisited the issue in *Lewis v. United States*, 518 U.S. 322 (1996).[(2)] The Court held that no right to a jury-trial exists where the defendant is prosecuted for multiple petty offenses. *Id*. at 330. To determine whether an offense is serious or petty, courts look to the maximum penalty set by the legislature. *Id*. at 326. If the offenses charged have been classified as petty, and imprisonment exceeds six months only because of the aggregation of the charges, the jury-trial right does not apply. *Id*. at 330.

¶30. At first glance, *Lewis* seems to require that we affirm Walls' conviction for criminal contempt. Closer inspection reveals that *Lewis* denies a defendant a jury only where the offense has been deemed petty by the legislature. *Id*. at 330. The facts of Walls' situation place his situation firmly under the *Codispoti* rationale. *See Lewis*, 518 U.S. at 330.

¶31. Although the Court in *Lewis* was faced with a defendant facing two counts of obstruction of the mail, the Court in *Lewis* discussed, at length, the criminal contempt charge present in *Codispoti*. "`...Even where the contempt is not a direct insult to the court ... it frequently represents a rejection of judicial authority, or an interference with the judicial process...'" *Lewis*, 518 U.S. at 328-29 (*quoting Codispoti*, 418 U.S. at 516). The power of the judge combined with the often heated context which is present in a contempt proceeding presented the "'very likelihood of arbitrary action that the requirement of jury trial was intended to avoid or alleviate.'" *Id* (*quoting Codispoti*, 418 U.S. at 516). A jury trial is a "protection against the arbitrary exercise of official power," and is "particularly important in the [contempt] context." *Id*. Finally, the *Lewis* court distinguished *Codispoti* in the following manner. "The absence of a legislative judgment about the offense's seriousness, coupled with the unique concerns presented in a criminal contempt case, persuaded us in Codispoti that, in those circumstances, the jury trial right should be determined by the aggregate penalties actually imposed." *Id*.

¶32. As in *Codispoti*, we face a situation where legislature has not set forth a maximum penalty under the statute. *See* Miss. Code Ann. 11-51-11(4) (Supp. 1997). Where the legislature has not specified a maximum penalty, courts use the severity of the penalty actually imposed as the measure of the character of the particular offense. *Lewis*, 518 U.S. at 329 (*citing Codispoti*, 418 U.S. at 516). Because we are faced with a statute lacking a maximum penalty, we must proceed under the rationale as set forth in *Codispoti*.

¶33. In the case *sub judice*, Walls was charged with and convicted of three counts of constructive contempt. Walls' conviction resulted from a single hearing held without a jury. Subsequently, he was sentenced to six months on each of the three counts for a total of 18 months to be served in the county jail. Applying *Codispoti*, we view Walls' punishment in the aggregate. Since Walls received an aggregate penalty greater than six months in jail, we have no choice but to reverse and remand his conviction for criminal contempt.

¶34. We hold that the chancellor committed reversible error in denying Walls' motion for a jury trial. The legislature has not set a maximum penalty for contempt under the statute. *See* Miss. Code Ann. § 11-51-11(4)(Supp.1997). The statute does provide that a contemnor is not entitled to a jury trial unless the fine exceeds $500.00, or the imprisonment exceeds six months in jail. *Id*. Whether

contempt is serious or petty cannot be determined from language of the statute. As noted above, this situation is analogous to the one faced by the Court in *Codispoti*. Where the legislature has failed to set a maximum penalty under the statute, this Court will view the punishment imposed on multiple charges in the aggregate. As Walls was sentenced to a total of 18 months in jail for contempt, we hold that the chancellor committed reversible error in failing to grant Walls' motion for a jury trial.

### IV. THE EVIDENCE FAILED TO PROVE ACTUAL AND KNOWING CRIMINAL CONTEMPT AND INTENT ON THE PART OF THE APPELLANT.

¶35. The burden of proof required to convict a defendant of contempt is "proof beyond a reasonable doubt." Miss. Code Ann. § 11-51-11(4)( Supp.1997). The factual findings of the chancellor are generally affirmed unless manifest error is present and apparent. *Premeaux v. Smith*, 569 So.2d 681, 683-84 (Miss. 1990). However, in criminal contempt cases, this Court proceeds *ab initio* to determine whether on the record the contemnor is guilty of contempt beyond a reasonable doubt. *Premeaux*, 569 So.2d at 683, 684; *Mabry v. Howington*, 569 So.2d 1165, 1167 (Miss. 1990); *Cook v. State*, 483 So.2d 371, 374 (Miss. 1986). A citation for contempt is proper when the contemnor has wilfully, deliberately, and contumaciously ignored the court. *Cooper v. Keyes*, 510 So.2d 518, 519 (Miss.1987). A decree which defines with reasonable specificity what the alleged contemnor must do or refrain from doing must be issued. *Hinds County. Bd. of Supervisors v. Common Cause of Mississippi*, 551 So.2d 107, 119-20 (Miss. 1989).

¶36. Walls argues that proof of his intent or knowledge was never raised at the hearing. The State asserts that the evidence introduced at trial showed beyond a reasonable doubt that Walls had knowledge of the order and contumaciously disobeyed the order by spraying restricted chemicals after entry of the order.

¶37. On June 11, 1996, the chancellor entered a preliminary injunction prohibiting Walls from "engaging in entomological work in the State of Mississippi, including the spraying, dusting, fumigating or using any other methods for the control or eradication of insect pests or rodents for a fee, and is prohibited from giving advice or prescriptions for the control or eradication of insect pests or rodents for a fee in this State, and is further prohibited from applying pesticides in the State of Mississippi, which are restricted by the EPA or the State of Mississippi." Walls signed the bottom of the preliminary injunction.

¶38. A review of the record reveals that the chancellor thoroughly and repeatedly informed Walls that he could not spray for pests. The record contains the following:

> THE COURT: Okay. Well, I'm going to enter an order today, which means you're not to do any of this type of work. Do you understand me? If you do and I find out about it, you're going to jail. Do you understand me?
>
> MR. WALLS: Yes.
>
> THE COURT: The order basically says that you are prohibited -- that means estopped -- from engaging in entomological -- that's a big word -- that means spraying for rats and roaches and insects and all that stuff. Do you understand that? It says that you are stopped from doing that. You can't spray, dust, fumigate, or use any other methods for control or eradication -- that

means doing away with -- insects, pests or rodents. You can't charge anybody for doing that during this period of time; and you can't give anybody any advice about how to make up this type of spray -- do you understand -- for any money? You can't tell somebody how to do that, and you get paid for it by telling them that. Do you understand?

MR. WALLS: Yes, sir.

¶39. The State and Walls entered into an agreed permanent injunction on October 9, 1996. The substance of the permanent injunction was the same as the temporary injunction. Walls also signed this order, as did his attorney.[3] At the trial, the State presented, through three witnesses, evidence that Walls sprayed their homes for a fee after the entry of the injunction. The State also presented evidence from an expert in pesticide investigations and a chemist that the chemical Walls sprayed in the three homes was methyl parathion, a chemical restricted by the EPA and the State of Mississippi.

¶40. It is clear from the record that the credible evidence produced at trial was sufficient to convict Walls of the crime of contempt. It is also clear that the evidence produced at trial was sufficient to prove Walls guilty beyond a reasonable doubt. This assignment of error is without merit.

### V. THE JUDGMENT OF CRIMINAL CONTEMPT IS CONTRARY TO LAW AND REPRESENTS A VIOLATION OF THE DEFENDANT'S FIFTH AMENDMENT RIGHTS.

¶41. Walls' arguments concerning this issue appear to go toward whether the evidence was sufficient to convict him of criminal contempt. The authority cited by Walls in his brief also concerns the sufficiency of the evidence. Sufficiency of the evidence was the subject of the above issue. This Court does not have to consider this issue. *Thibodeaux v. State*, 652 So.2d 153, 155 (Miss. 1995). Since this case must be reversed and remanded because of the failure to grant Walls' motion for a jury trial, we will briefly consider this issue.

¶42. The chancellor has the power to punish any person for breach of an injunction by fine or imprisonment or both. Miss. Code Ann. § 9-5-87 (1991). The burden of proof in a criminal contempt case is proof beyond a reasonable doubt. Miss. Code Ann. § 11-51-11(4) (Supp. 1997). This Court's review proceeds *ab initio* to determine whether on the record the contemnor is guilty of contempt beyond a reasonable doubt. *Premeaux*, 569 So.2d at 683-84. The above statutory requirements were complied with and the evidence adduced at trial proved that Walls was guilty beyond a reasonable doubt.

¶43. Finally, Walls argues that the judgment of criminal contempt was a violation of his Fifth Amendment rights. However, Walls does not cite any authority for this proposition, nor does he explain how his Fifth Amendment rights were violated. As outlined in issue four, Walls was afforded due process in the proceedings. Walls did not testify at the hearing, nor was any attempt made to force him to testify. In fact, the chancellor specifically pointed out that Walls would not be forced to testify. This assignment of error is without merit.

### CONCLUSION

¶44. We hold that the chancellor committed reversible error in denying Walls a jury trial. Walls' other

assignments of error are without merit. Walls' conviction for criminal contempt is reversed and remanded for resentencing of Walls to sentences that aggregate no more than six (6) months and a $500 fine, or to have a new trial with a jury.

¶45. **REVERSED AND REMANDED TO BE RESENTENCED TO SENTENCES THAT AGGREGATE NO MORE THAN SIX (6) MONTHS AND A $500 FINE, OR TO HAVE A NEW TRIAL WITH A JURY.**

**PRATHER, C.J., SULLIVAN AND PITTMAN, P.JJ., BANKS, McRAE, ROBERTS, SMITH AND MILLS, JJ., CONCUR.**

1. Walls did have a private applicator's license which permitted him to perform agricultural spraying but not residential spraying.

2. *Lewis* was charged with two counts of obstructing the mail. Each charge carried a maximum penalty of six months in prison.

3. The record shows that Walls was represented by Maxine Lawson-Conway on October 9, 1996. At the November 11, 1996 hearing and thereafter, Walls has been represented by his present counsel.