McMILLIN, C.J.,
for the Court:
¶ 1. This case is an appeal from a post-divorce proceeding in DeSoto County Chancery Court. The petitioner, Kelly Scroggins, sought to modify the existing custody order and also sought to have her former husband adjudicated to be in contempt for his failure to abide by certain terms of the divorce judgment. The chancellor denied Mrs. Scroggins any relief and she has appealed. She asserts that the chancellor erred when he (1) failed to modify the judgment to give her primary custody of the two minor children, (2) relied on the report of the children’s guardian ad litem in making the custody decision when the guardian ad litem had failed to properly investigate the matter, (3) failed to hold her ex-husband, Mr. Riley, in contempt, and (4) refused to award her attorney’s fees for bringing the action. We find the issues raised to be without merit and affirm.
I.
Facts
¶ 2. Wesley Riley and Kelly Riley Scrog-gins were divorced in September of 1996. The chancellor awarded Mr. Riley custody of the children, Brandon, age nine, and Kayla, age five. Mr. Riley was ordered to provide Mrs. Scroggins with duplicate medical records each time either child visited the doctor so that Mrs. Scroggins would be aware of the condition of the children’s health.
¶ 3. The judgment also awarded a number of items of personalty to Mrs. Scrog-gins that were located on real property then being offered for sale. Mr. Riley was obligated to store these items and make them available to Mrs. Scroggins in the event the property sold before she retrieved them.
¶ 4. Mrs. Scroggins filed a motion to reconsider the custody issue shortly after the judgment was entered in November 1996. The chancellor denied the motion in *470 May 1997. Six days after her motion was denied, Mrs. Scroggins filed the petition for custody modification and contempt that is now before this Court. In her petition, Mrs. Scroggins urged the chancellor to hold Mr. Riley in contempt for failing to provide her with copies of the children’s medical records on four occasions and for returning several of the items of personalty in damaged condition.
¶ 5. The matter was heard in January 1998. Mrs. Scroggins offered evidence that certain items awarded to her in the divorce were damaged when she obtained them from Mr. Riley’s possession. She complained of rust on a barbecue grill, water damage and other damage to some furniture pieces, and apparent malicious acts of destruction of some family photographs. She claimed that all the items had been in good condition at the time of the divorce. Mr. Riley testified that some of the damage had occurred because of a leak in a storage unit, and some was due to the age and poor condition of the furniture itself.
¶ 6. The evidence regarding Mr. Riley’s failure to provide Mrs. Scroggins with duplicate medical records each time either child visits the doctor was rather unsatisfactory. Mr. Riley admitted that he did not always furnish copies of medical records, but said that was sometimes due to the fact that he did not receive copies himself. In any event, it appears that Mr. Riley gave Mrs. Scroggins copies of all of the children’s outstanding medical records shortly before the chancellor held the hearing on Mrs. Scroggins’s petition.
¶ 7. At the hearing, Mrs. Scroggins testified that a change in custody was in order because her former husband had been neglecting the children’s medical needs. She said that Mr. Riley had failed to administer a needed Ritalin prescription to Brandon to control his hyperactivity that had been diagnosed as attention deficit disorder. She reported that Kayla had suffered from an ear infection when Mr. Riley had failed to properly care for the child’s pierced ears. There was proof that Mrs. Scroggins had obtained prescriptions for Kayla in regard to an inner ear infection that Mr. Riley refused to administer when the girl returned home, and Mrs. Scrog-gins urged this to be an incident of neglect.
¶ 8. Mr. Riley introduced evidence that Brandon was under the care of a pediatrician who was attempting to control the child’s behavioral problems by a medication other than Ritalin. He further presented proof that Kayla’s infection had received medical treatment. Other proof showed that, often after Mrs. Scroggins had taken one of the children to a doctor during a visit, Mr. Riley would immediately take the child to another doctor to obtain a second opinion as to a proper course of treatment.
¶ 9. Mrs. Scroggins presented proof that Brandon’s school performance had deteriorated while in his father’s custody; however, Mr. Riley, while not denying the fact, countered it with evidence that the child’s poor performance was traceable to anxiety over the fact of his parents’ divorce and not to any neglect or mistreatment at the hands of Mr. Riley.
¶ 10. Mrs. Scroggins asserted that evidence of bruising to the buttocks and back of the legs of Brandon indicated physical abuse, but there was testimony that, at Mrs. Scroggins’s urging, the Department of Human Services had investigated the matter and could develop no information indicating that Mr. Riley was physically abusing either child.
¶ 11. Prior to the hearing, the chancellor appointed a guardian ad litem for the children. After conducting her investigation, which included interviewing Mr. Riley and Mrs. Scroggins and both children, the guardian ad litem reported uncovering no facts that indicated the children were being mistreated or otherwise ill-served under the primary care of their father.
¶ 12. The chancellor found that Mrs. Scroggins had not presented sufficient evi *471 dence to demonstrate a material change in circumstances adverse to the children’s welfare and declined to modify custody. He concluded that Mr. Riley’s corporal punishment of his children was not so severe as to constitute abusive behavior. Though observing that Mr. Riley could fairly come in for some criticism for lack of attention to the children’s medical problems in some instances, the chancellor did not find the neglect to be so severe as to be a cause for serious concern about the children’s well being. The court concluded that Brandon’s behavioral problems and poor school performance were traceable to difficulties arising out of the divorce and its aftermath rather than to neglect or mistreatment by the custodial parent. The chancellor acknowledged that the guardian ad litem’s report was limited in nature by time and circumstances beyond the guardian’s control, but was of the opinion that he had sufficient information to properly decide the controversy. The chancellor refused to hold Mr. Riley in contempt for the damage to Mrs. Scrog-gins’s property. The court said that granting such relief would constitute a modification of their original agreement. The chancellor noted that “[p]roperty settlement agreements are fixed and final and may not be modified absent fraud or a contractual provision allowing modification.”
¶ 13. Finally, the chancellor declined to award attorney’s fees based on his failure to find Mr. Riley in contempt.
¶ 14. Aggrieved of the chancellor’s decision, Mrs. Scroggins has appealed.
II.
Failure to Modify Custody
¶ 15. As her first assignment of error, Mrs. Scroggins asserts that the chancellor erred in denying her request for modification of custody. A party seeking to modify child custody must first show a material change in circumstances adversely affecting the welfare of the child. Tucker v. Tucker, 453 So.2d 1294, 1297 (Miss.1984). Then the noncustodial parent must demonstrate that a change in custody would be in the child’s best interest. Arnold v. Conwill, 562 So.2d 97, 99 (Miss.1990). This Court reviews a chancellor’s decision in such matters within narrow limits. We may only reverse upon a finding that the chancellor was manifestly wrong, clearly erroneous, or applied an erroneous legal standard in denying the request for modification of custody, keeping in mind that the primary consideration is the well-being of the children. Wright v. Stanley, 700 So.2d 274, 280 (Miss.1997).
¶ 16. In this case, the chancellor found that there was insufficient evidence to demonstrate that Kayla and Brandon had been abused by their father. The chancellor’s finding on this point is supported by the record in this case. The chancellor heard testimony that the Department of Human Services had conducted an investigation and had not made any findings that Brandon and Kayla had been abused by Mr. Riley. Additionally, the guardian ad litem interviewed the children and reported that, in her view, any corporal punishment that the children described were within normal limits of parental discipline. There was competent evidence that Brandon’s emotional or behavioral problems were traceable to the turmoil of divorce and its aftermath and not to any mistreatment while in his father’s care. The chancellor was unconvinced from the evidence that Brandon and Kayla’s medical needs were being neglected, and that does not appear to be manifestly erroneous. Kayla’s ear problems had been treated and Brandon was under a physician’s care for any perceived behavioral problems.
¶ 17. The chancellor heard the testimony and observed the demeanor of the witnesses. Because his findings are supported by evidence in the record, we do not conclude that he erred in denying Mrs. Scroggins’s request for modification of custody.
*472 III.
Reliance on Report of the Guardian ad Litem
¶ 18. Mrs. Scroggins alleges that the guardian ad litem was less than diligent in her duties because she failed to inquire with the Department of Human Services about Brandon and Kayla’s bruises, she failed to interview Brandon and Kayla’s teachers, and she failed to review Brandon and Kayla’s school records. The guardian ad litem relied solely on her interview with Mr. Riley, Mrs. Scroggins, and the children in making her report. As a result, due to the limited investigation by the guardian ad litem, Mrs. Scroggins argues that the chancellor erred in relying on the guardian ad litem’s recommendation in denying Mrs. Scroggins’s petition for modification of custody.
¶ 19. The matter of appointment of a guardian ad litem in a case involving custody is not a requirement but rather is a matter entrusted to the chancellor’s sound discretion as guardian of all minors within the district. Adams v. Adams, 467 So.2d 211, 216 (Miss.1985). The chancellor in this case acknowledged that, because of time restraints, the guardian ad litem had not undertaken an in-depth investigation of all aspects of the matter, but the chancellor was apparently satisfied that the scope of the guardian’s inquiry was sufficient to protect the children from some detrimental circumstance not otherwise brought to the court’s attention. Mrs. Scroggins was able to present evidence directly to the chancellor on all of the various aspects that she claims the guardian ad litem should have investigated in more depth. She offers no reason as to why the guardian might have been able to develop additional information critical to the chancellor’s decision process that Mrs. Scroggins herself could not obtain. We are satisfied, after reviewing the chancellor’s findings, that he relied upon substantially more information than the guardian ad litem’s findings to make his determination not to change custody. Therefore, we decline to set aside the chancellor’s decision based on the assertion that the chancellor improperly placed too much reliance on the guardian ad litem’s allegedly incomplete work.
IV.
Contempt
¶20. Mrs. Scroggins argues that the chancellor erred in refusing to hold Mr. Riley in contempt for his failure to comply with two provisions of the divorce decree. One provision required Mr. Riley to provide Mrs. Scroggins with duplicate copies of the children’s medical records each time either child visits the doctor and the other provision required Mr. Riley to make available certain items of personal property that the chancellor had awarded to Mrs. Scroggins, which at the time of the divorce were in Mr. Riley’s possession. The chancellor declined to find Mr. Riley’s behavior contemptuous of his obligations under the judgment.
¶ 21. There was evidence that Mrs. Scroggins had previously experienced some difficulties in obtaining copies of all medical records for the children but it appears from the record that those problems had been resolved prior to the hearing. Nevertheless, Mrs. Scroggins urges that Mr. Riley should not escape punishment for contempt when he performed his required duties only after she had begun the contempt proceeding. The chancellor, however, found the evidence was insufficient to support a finding that Mr. Riley’s failure to promptly furnish all medical records rose to a level of wilful and contumacious disregard of his obligations under the judgment. There was substantial evidence that both parents had engaged in a running dispute over medical care for the children, with a doctor’s visit initiated by one parent almost certain to lead to another visit to another doctor by the other parent. In that atmosphere, it is difficult to see how the interests of the children were being advanced by the prompt ex *473 change of medical reports, the primary-purpose of which might reasonably be seen as simply gathering ammunition for another medical visit. The chancellor was justifiably critical of the behavior of both parents in the matter of the children’s medical needs but ultimately declined to hold Mr. Riley in contempt for his behavior in the dispute. Based upon our review of the record, we are satisfied that this decision was within the range of the discretion afforded to the chancellor in such matters and we decline to disturb that determination. Lahmann v. Hallmon, 722 So.2d 614(¶ 19) (Miss.1998); Smith v. Smith, 545 So.2d 725, 727-28 (Miss.1989).
¶ 22. As to the matter of the alleged damage to Mrs. Scroggins’s belongings, we note that two forms of contempt exist — civil and criminal. In order to determine whether contempt is civil or criminal we must examine the purpose for which the court’s power is exercised. Purvis v. Purvis, 657 So.2d 794, 796 (Miss.1994). The purpose of civil contempt is to “enforce the rights of private party litigants or to enforce compliance with a court order.” Id. Once the contemnor has performed the required act, he is relieved of the penalty. Id. at 796-97. Criminal contempt, on the other hand, is designed to punish a party for past offenses, and the punishment does not end when the con-temnor has complied with the court order. Id.
¶ 23. The form of the contempt sought by Mrs. Scroggins’s is criminal in nature since she seeks to punish Mr. Riley for either negligently permitting or wilfully causing her property to be damaged while in his safekeeping. Mrs. Scroggins failed to present any evidence that Mr. Riley wilfully damaged her property, nor was there sufficient evidence that he negligently permitted her property to suffer damage while it was in his control after the judgment of divorce. Even assuming an implied condition in the judgment that Mr. Riley take reasonable steps to preserve the property until Mrs. Scroggins obtained possession, there was no evidence of any negligence or want of care on Mr. Riley’s part in the time after entry of the divorce judgment. Accordingly, we can find no basis to disturb the chancellor’s refusal to hold Mr. Riley in contempt in this regard.
V.
Attorney’s Fees
¶ 24. As her final assignment of error, Mrs. Scroggins argues that the chancellor erred in denying her request for attorney’s fees in the contempt action. When a party’s petition for contempt is denied, attorney’s fees are not warranted. Cumberland v. Cumberland, 564 So.2d 839, 845 (Miss.1990). Having declined to find Mr. Riley in contempt, the chancellor did not err in refusing to assess attorney’s fees against him.
¶ 25. THE JUDGMENT OF THE DE-SOTO COUNTY CHANCERY COURT IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
KING AND SOUTHWICK, P.JJ., BRIDGES, IRVING, LEE, MOORE, PAYNE, AND THOMAS, JJ., CONCUR.