# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2016-KM-00546-SCT

*CHRISTOPHER SCOTT ROUTH*

*v.*

*STATE OF MISSISIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 04/13/2016 |
| TRIAL JUDGE: | HON. JEFF WEILL, SR. |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | DAVID NEIL McCARTY |
| | MERRIDA COXWELL |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: JOSEPH SCOTT HEMLEBEN |
| NATURE OF THE CASE: | CRIMINAL - MISDEMEANOR |
| DISPOSITION: | AFFIRMED - 04/27/2017 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE WALLER, C.J., KING AND MAXWELL, JJ.**

**MAXWELL, JUSTICE, FOR THE COURT:**

¶1.    Criminal contempt "involves an act 'which tends to bring the court into disrepute or disrespect.'"[1]  In this case, Christopher Scott Routh was found in direct criminal contempt after he disrespected the court—specifically by standing up to dispute a judge's bond ruling *after* the bond hearing had been concluded and despite being directed by the judge to sit

---

[1] ***Purvis v. Purvis***, 657 So. 2d 794, 797 (Miss. 1994) (quoting ***Lawson v. State***, 573 So. 2d 684, 686 (Miss. 1990)).

down and make any further argument by written motion. Because the record supports the criminal-contempt finding beyond a reasonable doubt, we affirm.

## Background Facts and Procedural History

¶2. On April 23, 2016, Christopher Routh represented Loren Shell-Blackwell (Blackwell) at her arraignment hearing. Routh is an attorney with the Hinds County Public Defender's Office. Blackwell had been indicted for capital murder.

¶3. Prior to the hearing, Blackwell had been out on bond, under house arrest. Routh requested Blackwell remain on bond and under house arrest. Routh argued his client had a constitutional right to reasonable bail. He also asserted the State had no evidence linking her to the crime.

¶4. The State responded that its policy is to request bond be denied to those charged with capital murder, and Blackwell should be no exception. The State argued, contrary to Routh's no-evidence claim, that Blackwell's DNA had been found at the murder scene, plus she had given incriminating statements to the police. Moreover, Blackwell posed a flight risk, having no ties to Hinds County. The State also pointed out that the only reason Blackwell had been granted bond previously was because she was pregnant. And now that her child was born, there was no longer any reason she remain out of jail.

¶5. At this point, the circuit judge asked Routh about Blackwell's infant, whom she had brought with her to the hearing. Routh responded that the baby had a certain digestive condition that required his mother breast-feed him. The judge asked what evidence Routh had to support this contention. At first, Routh equivocated, saying he was not familiar with

2

the exact condition but that was what his client told him. But then Routh began talking about a hospital discharge form. When asked if he wanted to introduce the form into evidence, Routh said yes. But before offering it, the judge permitted the State to review the form. The State pointed out that the document was a general discharge form from the hospital. It merely directed the baby be regularly fed breast milk *or formula*. After reviewing the record himself, the judge agreed the document contained no diagnosis of a gastrointestinal issue and no prescription for breast milk only. Because the form Routh presented stated the infant could be fed formula instead of breast milk, the judge found no compelling reason to grant bond on this basis.

¶6.    The judge then announced his decision—

> I'm going to deny bond. It's a capital murder charge. Another purpose of bond is to protect the public. Capital murder is an extremely serious charge which can carry the death penalty, and the DNA evidence cited by the State, along with the other summary of the evidence presented by the State, is compelling. So I'm going to deny bond.

But the judge then immediately advised he would "reconsider [his decision] upon the filing of the proper motion with proper evidence."

¶7.    At this point, the judge turned to Blackwell and asked if she had funds to hire a lawyer. When she answered "no," the judge told her he would appoint someone to represent her. Blackwell, audibly upset,[2] then asked if she could speak. The judge responded that he did not "believe now would be the time." But he reassured her that her appointed attorney would be in touch with her.

---

[2] The audio-recording of the arraignment hearing is part of the record.

3

¶8.     As a final matter, the judge asked if there was a family member who could take care of Blackwell's child or should social services be called. After Routh assured the judge the baby could go with Blackwell's relative who was in the courtroom, the judge concluded the hearing.

¶9.     At this point, Routh interjected, asking if he could make an argument. The judge told him he could not because the hearing was over. Routh launched into his argument anyway. At the same time the judge was asking him to sit down, Routh asserted that the Constitution required the reason denying bail be placed on the record. He then accused the judge of failing to do so.

¶10.    The judge found Routh in direct criminal contempt. After a ten-minute recess, the judge sentenced Routh. At sentencing, the judge told Routh—

> Mr. Routh, you had plenty of opportunity to make a record today and make your arguments. I'll note that you blatantly misrepresented something on the record today. After I made my ruling, I had told you I was not going to hear any further argument and you repeatedly refused my directive to sit down. I advised you to file a detailed written motion if you had anything else to present on this issue, and I'll still consider any written motion on the bond issue.
>
> Because you were held in direct criminal contempt and because of your refusal to abide by the rules of this court, I'm going to sentence you to spend some time in jail. I'm going to commit you to the custody of the sheriff of Hinds County for the afternoon until 5:00 p.m.

¶11.    Routh immediately filed an emergency petition with this Court, which was deemed in part to be a notice of appeal of the contempt finding. This Court also granted Routh's request for bond, permitting Routh to be released that day upon posting a $500 supersedeas bond.

4

**Discussion**

¶12.    The only question on appeal is whether the record, viewed ab initio, supports finding Routh in direct criminal contempt beyond a reasonable doubt.  *See Mingo v. State*, 944 So. 2d 18, 32 (Miss. 2006) (proceeding "ab initio" on criminal-contempt appeals, "determin[ing] on the record whether the person in contempt is guilty of contempt beyond a reasonable doubt").[3]  After review, we find that it does.

¶13.    "Conduct directed against the court's dignity and authority is criminal contempt." *Purvis v. Purvis*, 657 So. 2d 794, 797 (Miss. 1994).  "It involves an act 'which tends to bring the court into disrepute or disrespect.'"  *Id.* (quoting *Lawson v. State*, 573 So. 2d 684, 686 (Miss. 1990)).  Here, Routh challenged the dignity and authority of the trial court when he interjected his argument after the judge had ruled on the bond issue, clearly instructed Routh any further argument should be made by written motion, ended the hearing, denied Routh's request to make further oral argument, and directed Routh to sit down.

¶14.    On appeal, Routh argues he was asserting his client's constitutional right—namely, the constitutional requirement that, "[i]n any case where bail is denied before conviction, the judge shall place in the record his reasons for denying bail."  Miss. Const. art. 3, § 29(4). According to Routh, "an attorney respectfully asking for a trial court to follow Constitutional

---

[3] Whether the contempt is civil or criminal hinges on the purpose of the contempt finding.  "If the primary purpose of the contempt order is to enforce the rights of private party litigants or enforce compliance with a court order, then the contempt is civil." *Mingo*, 944 So. 2d at 32.  But if the purpose is "to punish the contemnor for disobedience of a court order," then the contempt is criminal.  *Id.*  Here, the purpose of the contempt finding was to punish Routh for disobeying the judge's order to sit down.  So the contempt was clearly criminal, prompting this Court's heightened review.

law can never warrant criminal contempt." The problem with this argument is that the transcript clearly shows the judge *had followed* the Constitution. Before denying bond, the judge explained his reasons for doing so—(1) the fact the crime was capital and punishable by death, (2) the need to protect the public, (3) the State's strong evidence against Blackwell, and (4) the lack of evidence to support Routh's contention that Blackwell's baby required breast milk. *See* Miss. Const. art. 3, § 29(1) (providing "all persons shall, before conviction, be bailable by sufficient sureties, *except for capital offenses . . . when the proof is evident* or presumption great" (emphasis added)). So the judge had already complied with this constitutional requirement before the acts giving rise to the criminal contempt. Thus, Routh cannot rely on "invoking a constitutional safeguard" as justification to continue arguing after the hearing had ended and while he was being asked to sit down. At this point, Routh was simply disputing the judge's decision to deny bond.

¶15. Moreover, had Routh believed the judge had not followed the Constitution when denying bond, Routh could have made this argument in a written motion. While the judge denied bond, he promised to reconsider his decision "upon the filing of the proper motion with proper evidence." But instead of filing a motion, Routh chose to disrupt the court.

¶16. "The contempt power is an important tool for keeping order and maintaining an efficient court system." ***In re Hoppock***, 849 So. 2d 1275, 1278 (Miss. 2003). We find the judge was trying to maintain order in his courtroom in the midst of a difficult situation—a new mother distraught over being denied bond and having to leave her baby with a relative. Routh made the courtroom *more* chaotic by standing up to dispute the judge's ruling after the

hearing had ended and despite being ordered to sit down, thereby "prevent[ing] the orderly administration of justice." *In re Williamson*, 838 So. 2d 226, 237 (Miss. 2002) ("Direct criminal contempt involves words spoken or actions committed in the presence of the court that are calculated to embarrass or prevent the orderly administration of justice."). In doing so, he "engaged in conduct intended to disrupt a tribunal," in violation of Mississippi Rule of Professional Conduct 3.5(d). Thus, we find the judge was within his authority to find Routh in direct criminal contempt.

### Conclusion

¶17. Disrupting the court by disputing a judge's ruling—after being expressly told not to—supports a finding of criminal contempt. We therefore affirm Routh's conviction of direct criminal contempt.

¶18. **AFFIRMED.**

**WALLER, C.J., DICKINSON AND RANDOLPH, P.JJ., KITCHENS, KING, COLEMAN, BEAM AND CHAMBERLIN, JJ., CONCUR.**