GRIFFIS, P.J.,
dissenting:
¶ 27. Is Zebert in jail because he failed to file a proper guardianship accounting,[10] or is he in jail because he failed to tell the chancellor what he did with the money he stole or misappropriated? The answer decides this case.
¶ 28. If Zebert is in jail because his accounting is insufficient, he is guilty of civil contempt. If Zebert is in jail because he will not say what he did with the money he took from the guardianship without approval, he may be guilty of constructive criminal contempt. The difference matters to the due process required.
¶ 29. I agree with the majority that there is sufficient evidence in the record to conclude that Zebert misappropriated, stole, or embezzled almost $200,000 from the guardianship. Zebert has been incarcerated for almost eighteen months now. The chancellor has said that he can get out of jail when he purges the contempt; said differently by the chancellor, “[ujntil you properly account to this court for every penny of this man’s money, you’re going to sit over there in the Rankin County jail.”
¶ 30. What does Zebert need to do to get out of jail, i.e., purge the contempt? Certainly, if he is able to return the money that he disbursed without court authority, *982 the contempt would be purged. If he tells the court that he squandered the money on “wine, women, and song,” would that be a “proper account” of the money? I do not think so. It is my analysis of the chancellor’s contempt order that Zebert must return the money to get out of jail.
¶ 31. Hence, my opinion is that Zebert was found not in civil contempt but in constructive criminal contempt. Although I agree that, ultimately, incarceration is the proper remedy for Zebert’s actions, I find that his actions are criminal, and he is subject to the due-process protections of the criminal-justice system before he is incarcerated. For these reasons, I respectfully dissent. I would reverse and vacate the chancellor’s order of contempt and incarceration.

I. Whether the order of contempt issued by the chancellor was civil or criminal in nature.

¶ 32. The distinctions between civil and criminal contempt are confusing, difficult, and often blurred. In Hinds County Board of Supervisors v. Common Cause, 551 So.2d 107, 120-21 (Miss.1989), the supreme court ruled:
The landmark case which distinguishes civil and criminal contempt is Gompers v. Bucks Stove & Range Co., 221 U.S. 418, 31 S.Ct. 492, 55 L.Ed. 797 (1911), which states the following:
Contempts are neither wholly civil nor altogether criminal. And it may not always be easy to classify a particular act as belonging to either one of these two classes. It may partake of the characteristics of both. It is not the fact of punishment but rather its character and purpose that often serve to distinguish between the two classes of cases. If it is for civil contempt the punishment is remedial, and for the benefit of the complainant. But if it is for criminal contempt the sentence is punitive, to vindicate the authority of the court. Imprisonment for civil contempt is ordered where the defendant has refused to do an affirmative act required by the provisions of an order which, either in form or substance, was mandatory in its character. Imprisonment in such cases is not inflicted as a punishment, but is intended to be remedial by coercing the defendant to do what he had refused to do. The decree in such cases is that the defendant stand committed unless and until he performs the affirmative act required by the court’s order. On the other hand, if the defendant does that which [he] has been commanded not to do, the disobedience is a thing accomplished. Imprisonment cannot undo or remedy what has been done nor afford any compensation for the pecuniary injury caused by the disobedience. If the sentence is limited to imprisonment for a definite period, the defendant is furnished no key, and he cannot shorten the term by promising not to repeat the offense. Such imprisonment operates, not as a remedy coercive in its nature, but solely as punishment for the completed act of disobedience.
(Emphasis added).
¶ 33. Recently, in Corr v. State, 97 So.3d 1211 (Miss.2012), the supreme court considered a contempt order that is similar to the one in this case. There, the chancellor found that process servers were in direct criminal contempt and were sentenced to a term of incarceration. Id. at 1213 (¶ 3). The court considered the due-process protections that were afforded. The court held:
[I]n classifying a finding of contempt as civil or criminal, this Court focuses on the purpose for which the power was *983 exercised. On appeal, the trial court’s classification is not conclusive. Thus, the determination should focus on the character of the sanction itself and not the intent of the court imposing the sanction.
Id. at 1214 (¶ 7) (citation omitted).
¶ 34. The majority is satisfied that Ze-bert’s contempt was civil. “The purpose of civil contempt is to compel compliance with the court’s orders, admonitions, and instructions, while the purpose of criminal contempt is to punish.” In re McDonald, 98 So.3d 1040, 1043 (¶ 5) (Miss.2012) (quoting Graves v. State, 66 So.3d 148, 151 (¶ 11) (Miss.2011)). To determine the type of contempt, we must “focus on the character of the sanction itself and not the intent of the court imposing the sanction.” Corr, 97 So.3d at 1214 (¶ 7) (citations omitted).

A. Proceedings before the previous chancellor

¶ 35. This guardianship began in 2000. For approximately seven years, Zebert filed and presented annual accountings. The assigned chancellor approved each one of the accountings. In fact, by order dated February 14, 2008, the chancellor held that Zebert’s “Petition Exhibiting Seventh Annual Accounting filed herein be, and the same hereby is approved and allowed as such.” Zebert was current on the required guardianship accountings through September 30, 2007. The guardianship bank account had a balance of $164,909.93.
¶ 36. From October 2008 through October 2010, the clerk and the assigned chancellor issued a number of reminders, orders to show cause, and orders continuing hearings. Each of these asked Zebert to file the annual accountings required by Uniform Chancery Court Rules 6.01 through 6.17.
¶ 37. On October 4, 2010, Zebert filed a “Petition Exhibiting Eight[h] Accounting of Estate.” The chancellor did not approve this accounting. Instead, by order dated July 26, 2011, Zebert was found in contempt and ordered to be incarcerated until he complies with the Uniform Chancery Court Rules by filing and having approved all annual accountings past due. Nevertheless, the order suspended Ze-bert’s incarceration until August 4, 2011.
¶ 38. Zebert then filed a motion for recusal. The chancellor executed another order, dated August 4, 2011, that found Zebert in contempt and ordered his incarceration. Again, the order suspended his incarceration order until September 8, 2011.
¶ 39. On August 8, 2011, the chancellor entered an order that “stayed indefinitely” the previous contempt and incarceration order. The chancellor also recused himself from presiding over this case. The case was transferred to Chancellor Dan Fairly.

B. Proceedings before the current chancellor

¶ 40. On September 8, 2011, Zebert filed a “Petition Exhibiting Eight[h] Accounting of Estate.” Attached to the petition was a schedule of income and expenses, in a form similar to the earlier accountings. On the same day,, the chancellor entered an order of continuance until September 19, 2011.
¶ 41. On September 19, 2011, Zebert filed a “Supplement to Eighth Accounting of Estate.” Zebert noted that disbursements, in the form of “loans,” had made from the guardianship account. These loans were not authorized. Attached were letters from First Commercial Bank that stated the balance in the guardianship account was $6,555.50. Also attached were approximately fifty-five pages of canceled checks (i.e., vouchers) written on the guardianship account.
*984 ¶ 42. A hearing was held on September 19, 2011, but there is no transcript in the record. The chancellor entered an order that provided:
Jason T. Zebert is found in willful and contumacious contempt of this Court’s prior oral order to present to this Court bank statements in this cause.
[[Image here]]
[A]ll other matters in this cause, including but not limited to other findings of contempt and incarceration, are hereby continued to October 3, 2011 at 9:00 a.m. at which time the Court expects Jason T. Zebert to present to the Court bank statements and copies of canceled checks for the Court’s review.
(Emphasis added). There is no record of a hearing held on October 3, 2011.
¶ 43. In January 2012, the chancery clerk served Zebert with yet another notice of a past-due accounting. On July 5, 2012, the chancellor issued an order to show cause for a past due-accounting. The order directed Zebert to appear on July 18, 2012, “to show cause, if any they have, why they should not be sanctioned and/or removed.”[11]
¶ 44. On July 18, 2012, Zebert filed the “Petition Exhibiting Ninth Accounting of Estate.” Attached was a schedule of income and expenses, in a form similar to the earlier accountings. The petition indicated that the guardianship account had a balance of $564.41. Also, on July 18, 2012, Zebert filed an “Accounting Supplement” that stated: “Attached hereto are the listings of the electronic loan disbursements in the above referenced Estate Account.” There were two pages attached that itemize, by date, “loan disbursements” in the sum of $48,745.
¶ 45. A hearing was held on July 18, 2012. The transcript is in .the record. The chancellor identified each pleading filed in the court file and interrogated Zebert. The chancellor was not satisfied with Zebert’s accountings or Zebert’s inability to testify about where the guardianship funds had been spent. Also, the chancellor was concerned that Zebert had misappropriated a substantial sum of the guardianship’s assets. At the conclusion of the hearing, the chancellor held Zebert in contempt and incarcerated him. In the order, the chancellor held:
THIS CAUSE came on for hearing on the Order to Show Cause for failure of the Fiduciary, Jason T. Zebert, to present and have approved an accounting in this matter[,] and the Court after finding that it has jurisdiction over the parties and subject matter herein, further finds that Jason T. Zebert has failed to present and have approved the accounting in this cause.
IT IS THEREFORE ORDERED, ADJUDGED and DECREED that Jason T. Zebert be and is hereby found in willful and contumacious civil contempt of this *985 Court’s prior orders to present and have approved an accounting in this cause.
[Footnote 1] While accountings have been presented, none have been approved by the Court. All of the presented accountings and supplements fall woefully short of the statutorily required information necessary for the Court to approve same. Vouchers, presented by Mr. Zebert after being previously ordered by the Court, showed unauthorized and unapproved expenditures made by Jason T. Zebert.
IT IS FURTHER ORDERED, ADJUDGED and DECREED that the Sheriff of Rankin County, Mississippi, is authorized and empowered to seize and confine Jason T. Zebert and incarcerate him in the Rankin County Jail until he purges himself of such contempt.
IT IS FURTHER ORDERED, ADJUDGED and DECREED that the pri- or Order of Contempt and Incarceration entered in this cause by the Chancellor for Place 2 of the Chancery Court of Rankin County, Mississippi, that suspended the incarceration of Jason T. Zebert, be and is hereby lifted and reinstated.
This is the order from which Zebert appeals.
¶ 46. Harry Rosenthal appeared at the July 18, 2012 hearing as the “custodian-in-faet” of Mr. Baker. Rosenthal provided the chancellor with several documents and bank statements. These documents were included in record. The docket identifies these documents as “Accounting Exhibits filed by D.F,” and the table of contents of the record identifies these as “Accounting Exhibits filed by Judge Fairly.” The record contains approximately 200 pages of documents, which may be identified as follows:
A. Correspondence between the Veteran’s Administration and Rosenthal.
B. The guardianship’s monthly bank statement, at Regions Bank, for the period of September 15, 2011 through October 13, 2011, including canceled checks.
C.A document, dated November 15, 2011, signed by Rosenthal, titled “Amended Custodian’s Second Annual Accounting of the Estate of Thomas E. Baker for the period 10/10/10 through 10/1/11,” and filed with the Veterans Administration. This accounting provided the following information:
Beginning balance $154,100.01
Funds received 44,519.40
Less expenditures -6,164.76
Ending balance $192,454.65
Attached were copies of bank statements, including deposit slips and canceled checks, for the period of October 14, 2010 through October 13, 2011.
D.A document, dated October 29, 2010, signed by Rosenthal, titled “Guardian’s First Annual Accounting of the Estate of Thomas E. Baker, September 9, 2009[,] to October 30, 2010,” and filed with the Veteran’s Administration. In this accounting, Rosenthal indicated that he was requested to serve as Mr. Baker’s guardian on September 2, 2009. Rosenthal was approved as the [Veterans’ Administration’s] guardian-in-fact. This accounting provided the following information:
Beginning balance $0.00
Funds received 154,119.01
Less expenditures -19.00
Ending balance $154,100.01
E.The guardianship’s monthly bank statements, from an account with Regions Bank, with Rosenthal as signatory, for the period of April 19, *986 2012 through June 19, 2012, including canceled checks.
F. The guardianship’s monthly bank statements, from an account with First Commercial Bank, with Ze-bert as signatory, for the period from October 16, 2007 through June 16, 2011, including canceled checks.
¶47. On July 19, 2012, Judge Fairly executed another order that states: “Ordered that the prior Order of August 8, 2011, to the extent that it sealed the order of that date and any prior orders be and the same is hereby rescinded.”
G. Character of Sanction — Civil or Criminal Contempt
¶ 48. As stated earlier, the type of contempt is based “on the character of the sanction itself and not the intent of the court imposing the sanction.” Corr, 97 So.3d at 1214 (¶ 7).
¶ 49. The chancellor has determined, and record evidences, the fact that Zebert made unauthorized disbursements from the guardianship account for his personal benefit. The majority recognizes, and I agree, that Zebert faces criminal charges.[12]
¶ 50. My examination of the record finds: (1) several petitions to approve ac-countings filed by Zebert;[13] (2) the guardianship’s monthly bank statements that show Zebert’s unauthorized disbursements (these were presented to the chancellor at the July 18, 2012 hearing by Rosenthal and were in the record before the chancellor entered the July 18, 2012 order);[14] (3) all of the guardianship account’s canceled checks (i.e. vouchers) (also filed by Rosen-thal).[15] The record before this Court contains sufficient evidence of how the guardianship funds were spent. This evidence does not show where Zebert spent the money after it was transferred to his personal accounts or for his personal use.
¶ 51. The majority determines that Ze-bert is “merely being required to provide a statement of all income and disbursements to and from Baker’s trust account, together with all his paperwork related to his *987 management of Baker’s funds from October 2007 to September 2008.” Maj. Op. at (¶ 13). If that is all that is required, such information is in the record before this Court and was in evidence before the chancellor on July 18, 2012. Yet, I do not believe this was the reason why Zebert was held in contempt and incarcerated.
¶ 52. The majority then concludes:
Yet, over one year later, the record is still devoid of any documentation as to where the misappropriated funds have gone. Despite the chancery court’s language in the order, it is apparent from the record that Judge Fairly knew there were unapproved expenditures; he merely wanted Zebert to provide the documentation that would evidence where the funds went. Although Zebert claims nothing further could be gained by another accounting, we observe that appellate counsel for Zebert could not state with certainty that Zebert has provided all the documentation that he has. The fact remains that the only accounting for the period at issue in this case is incomplete and contains evidence of fraud. Zebert admits to being solely responsible for the missing funds; appellate counsel emphatically stated to the Court that Zebert was the “person who took the money and had it at his disposal.”
Id. (emphasis added). This finding makes it clear that both the majority and the chancellor do not expect Zebert to purge the contempt by filing documents in the nature of the accounting. Instead, the contempt can only be purged if Zebert confesses to taking the money and tells the chancellor where the money has gone. This information will assist in the recovery of the funds that were illegally removed.[16] Thus, in my opinion, when the chancellor held that Zebert is to be incarcerated until he can “account for every penny,” this is a criminal contempt.[17]
¶ 58. I cannot find the wrongful conduct here is Zebert’s failure to account. Instead, it appears that the chancellor seeks restitution for the guardianship. The record contains the information necessary to comply with the accounting requirements *988 of the Uniform Chancery Court Rules. Instead, it appears to me that the wrongful conduct is the fact that Zebert misappropriated, stole, or embezzled the guardianship’s assets. I interpret the chancellor’s contempt order as an effort to find and recover the money unlawfully taken.
¶ 54. In Corr, the court held:
The proceedings were for constructive (indirect) criminal contempt, “that is, for acts that — in whole or in part — occurred outside the presence of the judge” not for direct criminal contempt, and, therefore, Appellants were entitled to due-process protections. “A direct criminal contempt is one which takes place in the very presence of the judge making all the elements of the offense personal knowledge.” This Court has provided that:
[Djirect criminal contempt involves words spoken or actions committed in the presence of the court that are calculated to embarrass or prevent the orderly administration of justice. Punishment for direct contempt may be meted out instantly by the judge in whose presence the offensive conduct was committed[.]
Unlike direct contempt, constructive contempt involves actions which are committed outside the presence of the court. In the case of constructive criminal contempt, we have held that defendants must be provided with procedural due process safeguards, including a specification of charges, notice, and a hearing.
Corr, 97 So.3d at 1214 (¶ 8). Here, the wrongful conduct did not occur within the presence of the chancellor. Instead, the wrongful conduct was the unauthorized expenditures of guardianship funds. As such, I conclude that the contempt proceedings were for constructive criminal contempt despite the majority’s and the chancellor’s characterization of the contempt as being civil.
¶ 55. When the chancellor learns that a fiduciary has misappropriated, stolen, or embezzled guardianship assets, as the case here, there comes a point that it becomes a criminal matter and the wrongdoer is entitled to certain inalienable rights protected by the Constitution. In criminal cases as in criminal-contempt matters, even Zebert is entitled to the presumption of innocence and basic constitutional protections.[18] For example, Zebert may assert his constitutional right to remain silent.[19] The Fifth Amendment of the United States Constitu *989 tion provides that “[n]o person shall ... be compelled in any criminal case to be a witness against himself.” In this action, it appears to me that Zebert’s choice is to either testify against himself and get out of jail on the chancellor’s contempt and incarceration order, or assert his constitutional right and remain in jail without the possibility of bond.
¶ 56. I commend the chancellor for his efforts in the handling of this matter, and I note the difficulty presented by current legal precedent on contempt. Nevertheless, I am compelled to conclude that the chancellor’s finding was one of constructive criminal contempt and not civil contempt.
¶ 57. In Corr, the supreme court held: The Mississippi Constitution provides that, “in all criminal prosecutions the accused shall have a right to demand the nature and cause of the accusation.” Miss. Const, art. 3, § 26 (1890). For indirect criminal contempt, this Court requires notice of the charges and the specific conduct alleged to be contemptuous and a hearing. See Purvis [v. Purvis], 657 So.2d [794] 798 [ (Miss.1994) ] (“constructive contempt requires a specification of charges, notice and a hearing.”) (citing Wood v. State, 227 So.2d 288, 290 (Miss.1969)); Moulds v. Bradley, 791 So.2d 220, 225 (Miss.2001) (“Without notice of constructive criminal contempt sanctions, the accused’s due process rights were violated.”); Premeaux [v. Smith], 569 So.2d [681] 684 [(Miss.1990)] (“defendant must be afforded minimum due process rights” and “[d]ue process includes notice to the alleged contemnor that she was being considered for criminal contempt.”) (citing Mabry v. Howington, 569 So.2d 1165, 1167 (Miss.1990), and Cook v. State, 483 So.2d 371, 375 (Miss.1986)). The chancellor issued orders in the underlying DHS cases notifying Appellants of show-cause hearings and instructing them to “be prepared to present evidence as to why they should not be found in contempt of court and sanctions, including incarceration and/or a fine, should be entered.” Thus, Appellants received a modicum of actual notice of the contempt proceedings.
However, the chancellor did not issue summonses to the proceedings. Criminal-contempt defendants are entitled to notice under Mississippi Rule of Civil Procedure 81(d), which requires service of process. [M.R.C.P.] 81(d)(2). This Court has explained that, “although contempt proceedings often are filed in the same cause number and proceed with the underlying case, they are held to be separate actions, requiring new and special summons under Mississippi Rules of Civil Procedure 81.” Shavers v. Shavers, 982 So.2d 397, 402 (Miss.2008) (citation omitted); see Hanshaw v. Hanshaw, 55 So.3d 143, 146 (Miss.2011) (“Because contempt proceedings are distinct actions, they require notice consistent with Mississippi Rule of Civil Procedure 81(d).”). “In contempt proceedings, ‘complete absence of service of process offends due process and cannot be waived.’” Dennis v. Dennis, 824 So.2d 604, 609 (Miss.2002) ... (emphasis added) (citations omitted). Thus, notice by the issuance of summonses under Rule 81 must occur before contempt proceedings are conducted. The failure to issue Appellants summonses for the contempt proceedings violated Appellants’ due-process rights and likewise warrants reversal.
Corr, 97 So.3d at 1216 (¶¶ 11-12).
¶ 58. Based on Corr, I conclude that the contempt proceedings here were for constructive (indirect) criminal contempt. I also find that the chancellor was required to issue process that would give Zebert *990 notice of the criminal charges against him. The chancellor failed to do so and violated Zebert’s due-process rights. I would vacate the contempt judgments and vacate the order of incarceration.

II. Whether the chancellor was required to recuse.

¶ 59. Because the majority has affirmed this case, I see no reason to address this issue other than to say that the court in Corr held that recusal is mandatory in a constructive criminal contempt proceeding. Id. at 1215 (¶ 10).
¶60. It is for these reasons that I respectfully dissent.
ISHEE AND ROBERTS, JJ., JOIN THIS OPINION.

. See Uniform Chancery Court Rules 6.01 through 6.17.

. Zebert argues that he was not served with proper process. Zebert was served notice under Mississippi Rule of Civil Procedure 5. He was not served with a M.R.C.P. 81 summons. As the attorney of the guardianship, Zebert was ordered to appear and "to show cause, if any they have, why they should not be sanctioned and/or removed.” At the hearing, Zebert was not removed. Zebert complained at the hearing that he did not have proper notice of the hearing. Zebert was held in contempt and jailed. A court order that sets a hearing of contempt, which could result in incarceration, requires that a summons be served on the defendant under M.R.C.P. 81. Here the defendant is Zebert, the attorney, serving in a fiduciary capacity in relation to the guardianship. The chancellor's failure to ensure proper service of process, under M.R.C.P. 81, is a violation of Zebert’s due-process rights and requires reversal. See Powell v. Powell, 644 So.2d 269, 274 (Miss.1994).

. Mississippi Code Annotated section 97-23-19 (Supp.2013), titled, "Embezzlement; by agents, bailees, trustees, servants and persons generally,” provides:
If any person shall embezzle or fraudulently secrete, conceal, or convert to his own use, or make way with, or secrete with intent to embezzle or convert to his own use, any ... money, or other valuable security, effects, or property of any kind or description which shall have come or been entrusted to his care or possession by virtue of his office, position, place, or employment, either in mass or otherwise, with a value of Five Hundred Dollars ($ 500.00) or more, he shall be guilty of felony embezzlement, and, upon conviction thereof, shall be imprisoned in the custody of the Department of Corrections not more than ten (10) years, or fined not more than Twenty-five Thousand Dollars ($25,000.00), or both.

. The petitions do not fully comply with Uniform Chancery Court Rules 6.03 and 6.05. Nevertheless, Zebert did file petitions showing each disbursement of the guardianship funds, albeit some disbursements were neither authorized nor for the benefit of the ward.

. The bank statements, albeit copies, provide the information required by Uniform Chancery Court Rule 6.03. The presentation of these bank statements appear, in my opinion, to purge Zebert’s contempt finding in the September 19, 2011 order, which found Ze-bert "in willful and contumacious contempt of this Court’s prior oral order to present to this Court bank statements.” Based upon the presentation of these bank statements, Zebert was no longer in contempt of the September 19, 2011 order.

. Based on Uniform Chancery Court Rule 6.04, the vouchers must "consist of a receipt or canceled bank check showing to whom and for what purpose the money was paid.” The checks included in the record certainly show to whom the money was paid, there are a number of checks written to Zebert and the bank statements show electronic transfers.

. I rely on the majority’s reference to the chancellor’s words in response to Zebert’s motion for writ of habeas corpus:
The Court had before it an abundance of evidence to find Zebert in willful and contumacious contempt of Court and ordered him jailed. Zebert committed a fraud upon the Court. He stole Baker’s money. But that is not why he remains in jail. He remains in jail and, to the extent this Court has the power, will remain in jail until he gives the Court a full and complete accounting of all the funds which he wrongfully expended and, since he has failed to account for the money, presumably stolen. He offered no explanation as to where the money went that he transferred electronically to one of his personal accounts. This Court wants to know: Where did the money go? An accounting will reveal that....
In conclusion, this Court is strongly persuaded and continues to conclude that unless and until Zebert purges himself of his contempt, which he can do ... by presenting a full and complete accounting of all funds he removed from the Baker account, he should remain in the Rankin County jail.
(Emphasis added).

. I note that the chancellor was correct to order a forensic audit of the guardianship accounts. Indeed, a claim should be filed against Zebert that would allow the exercise of subpoena power to follow the funds and seize any and all documents from Zebert's office, his home, or from others who may have knowledge or information about the monies wrongfully taken from this guardianship. The record before this Court, however, does not indicate that Zebert has been discharged as the guardian, a new guardian appointed, or any efforts made to recover on the surety bond, from Zebert or others who may have received these monies. If such claim has not been filed, the limitations period may soon preclude such action or otherwise limit recovery.

. These constitutional protections include, but are not limited to, the Fifth Amendment right not to "be compelled in any criminal case to be a witness against himself, nor be deprived of ... liberty ... without due process of law,” and the Sixth Amendment "rightfs] to a speedy and public trial, by an impartial jury ..., to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the Assistance of Counsel for his defence.” With a criminal charge against him, Zebert would also be entitled to a reasonable bail. Zebert has been afforded none of these protections here, and he has been incarcerated for approximately eighteen months.

. The majority responds that Zebert has waived his right to assert his constitutional rights because he should have asserted these rights when the previous chancellor requested an overdue accounting. To support this contention, the majority cites a 1997 Maine criminal court decision. There, at least, the issue of the defendant’s constitutional rights were submitted to a court of criminal jurisdiction. State v. Richard, 697 A.2d 410 (Maine 1997). I do not believe this case supports the majority’s argument. Instead, I used this as an example to establish that Zebert’s actions were recognized by the chancellor to be criminal in nature, it should have been turned over to the district attorney, and Zebert’s incarceration based on the criminal laws of this State.