RANDOLPH, Justice,
for the Court:
¶ 1. Appellants appeal direct criminal contempt orders for failing to serve or improperly serving process on defendants in paternity and child-support proceedings and for notarizing proof-of-service affidavits outside the presence of the affiants.[1] The chancellor initially found Appellants in civil contempt and ordered a sentencing hearing. However, after conducting that hearing, he proceeded to hold all in direct criminal contempt. Appellants submit, and the State concedes, that the alleged conduct was not direct criminal contempt, but constructive criminal contempt. As the conduct was not civil contempt or direct criminal contempt, the chancellor should have recused himself from the proceedings. The Appellants were entitled to the due-process safeguards required for constructive criminal contempt proceedings. Accordingly, we reverse the contempt judgments and remand the cases to the Jackson County Chancery Court for entry of an order of recusal, and otherwise order proceedings consistent with this opinion.
FACTS AND PROCEDURAL HISTORY
¶ 2. Mississippi Department of Human Services (“DHS”) retained the law firm of Young Williams, P.C., for a large number of paternity and child-support cases. The law firm contracted process-service companies to serve defendants in the DHS cases. Individual process servers were instructed *1213 to serve process on a defendant, complete a proof-of-service affidavit, and send it to the owners of the process-service companies. Upon receipt of the affidavits, the owners, who were notaries public, would notarize them outside the presence of the individual process servers.
¶ 3. In four cases, the DHS defendants testified that they had not been served personally. The chancellor then issued show-cause orders for a hearing and issued subpoenas instanter, requiring the process servers (Lott, Corr, and Moon) to appear and demonstrate why they should not be held in contempt for failing to serve process as set forth in their proof-of-service affidavits and for signing the affidavits outside the notary’s presence. The chancellor also issued show-cause orders and subpoenas instanter, requiring the owners of the process-service companies (Smith and Wells) to appear and show cause why they should not be held in contempt for notarizing proof-of-service affidavits without administering oaths and witnessing the process servers signing the affidávits. At the show-cause hearings for Lott, Corr, Smith, and Wells, Lott and Corr testified that they had served process as set forth in their affidavits. No one disputed that the process servers had signed the proof-of-service affidavits outside the notary’s presence and the notaries later had signed and sealed them outside the process servers’ presence. At the conclusion of that hearing, the chancellor held Lott, Corr, Smith, and Wells in civil contempt.[2] Thereafter, he conducted a combined “sentencing hearing,” and then found Lott, Corr, Moon, Smith, and Wells in direct criminal contempt and sentenced each of them to thirty days in'jail and a $100 fine.
ISSUES
¶ 4. Appellants raised numerous issues. Our holding requires us to address only the following two:
1. Whether the chancellor’s judgments holding Appellants in direct criminal contempt should be reversed, because the chancellor failed to recuse himself where he initiated, prosecuted, and adjudicated the criminal contempt proceedings.
2. Whether the judgments holding Appellants in direct criminal contempt should be reversed, because the alleged contemptuous conduct occurred outside the presence of the court, and Appellants were not given notice of the criminal nature of the proceedings and served with summonses.
LAW AND ANALYSIS
I. Standard of Review
¶ 5. We apply a de novo standard when reviewing procedural issues raising questions of law. See Kumar v. Loper, 80 So.3d 808, 812 (Miss.2012) (“On questions of law, appellate courts use a de novo standard of review.”) (citation omitted).
II. The chancellor violated Appellants’ due-process rights by failing to recuse himself from the proceedings for constructive criminal contempt and failing to provide appellants notice of the criminal nature of the charges.
¶ 6. The State concedes that these cases involved neither civil contempt nor *1214 direct criminal contempt, but that, instead, the proceedings were for constructive criminal contempt. Thus, Appellants were entitled to due-process protections. Accordingly, the chancellor was required to recuse himself from the proceedings and to issue summonses giving Appellants notice of the criminal contempt charges against them. See In re Smith, 926 So.2d 878, 888 (Miss.2006) (“The citing judge must recuse himself from conducting the [constructive] contempt proceedings involving the charges.”) (emphasis added) (citation omitted); Premeaux v. Smith, 569 So.2d 681, 684 (Miss.1990) (“defendant must be afforded minimum due process rights” and “[d]ue process includes notice to the alleged contemnor that she was being considered for criminal contempt.”) (citation omitted).
¶ 7. Appellants’ argument, the State’s concession, and the record convince us that the proceedings were for criminal contempt, not civil contempt. This Court has provided that:
[i]n classifying a finding of contempt as civil or criminal, this Court focuses on the -purpose for which the power was exercised. On appeal, the trial court’s classification is not conclusive. Thus, the determination should focus on the character of the sanction itself and not the intent of the court imposing the sanction.
Cooper Tire & Rubber Co. v. McGill, 890 So.2d 859, 867-68 (Miss.2004) (emphasis in original) (citations omitted). “The purpose of civil contempt is to compel compliance with the court’s orders, admonitions, and instructions, while the purpose of criminal contempt is to punish.” Graves v. State, 66 So.3d 148, 151 (Miss.2011) (citations omitted). The chancellor did not hold Appellants in contempt to compel compliance with an order, admonition, or instruction, but rather as punishment for alleged past
offenses — failure to serve process personally and their signing and notarizing of proof-of-service affidavits without the notary being physically present to witness the signatures.
¶ 8. The proceedings were for constructive (indirect) criminal contempt, “that is, for acts that — in whole or in part — occurred outside the presence of the judge[,]” not for direct criminal contempt, and, therefore, Appellants were entitled to due-process protections. Graves, 66 So.3d at 153. “A direct criminal contempt is one which takes place in the very presence of the judge making all the elements of the offense personal knowledge.” Varvaris v. State, 512 So.2d 886, 887-88 (Miss.1987) (emphasis added) (citation omitted). This Court has provided that:
[d]irect criminal contempt involves words spoken or actions committed in the presence, of the court that are calculated to embarrass or prevent the orderly administration of justice. Punishment for direct contempt may be meted out instantly by the judge in whose presence the offensive conduct was committed
[[Image here]]
Unlike direct contempt, constructive contempt involves actions which are committed outside the presence of the court .... In the case of constructive criminal contempt, we have held that defendants must be provided with procedural due process safeguards, including a specification of charges, notice, and a hearing.
In re Williamson, 838 So.2d 226, 237 (Miss.2002) (emphasis added) (citation omitted).
¶ 9. The chancellor’s order recited that Appellants’ conduct occurred in the court’s presence — and, thus, that he properly held them in direct criminal contempt — because *1215 they filed proof-of-service affidavits with the clerk’s office and “knew or should have known that the Clerk’s office constituted part of th[e chancery c]ourt.” However, on appeal, the State does not adopt the chancellor’s ruling that the filing of the affidavits was a basis for holding Appellants in direct contempt. Rather, in its reply briefs, the State takes the position that:
the Chancellor by the use of the phrase “... knew or should have known” ... was describing negligent behavior as the basis of direct contempt. However as the Mississippi Supreme Court has noted “... gross negligence does not rise to the level [of] willful conduct which is required to support a finding of criminal contempt.”
(Citation omitted.) We agree with the Appellants and the State that the conduct at issue did not occur in the court’s presence. Finding that the allegedly improper service and the improperly executed affidavits occurred outside the court’s presence, we conclude that the contempt proceedings were for constructive criminal contempt, despite the chancellor’s characterization of them as being for civil contempt and direct criminal contempt. See Purvis v. Purvis, 657 So.2d 794, 797 (Miss.1994) (finding that “[t]he essence of the trial court’s ruling was founded on constructive criminal contempt regardless of what acts the chancellor said were attributed with the penalty imposed”).

A. Mandatory Recusal

¶ 10. The State conceded that “since it would appear the actions were more in the nature of a constructive attempt[,] it would have required the judge to have the actual contempt hearing conducted by another judge.” (Citation omitted.) This Court has provided that:
in cases of indirect or constructive criminal contempt, “where the trial judge has substantial personal involvement in the prosecution, the accused contemnor must be tried by another judge.” ... [E]xamples of “substantial personal involvement in the prosecution” warranting recusal include cases where the trial judge acts as a “one-man grand jury;” where the trial judge is “instrumental in the initiation of the constructive-contempt proceedings;” and where the trial judge “acts as prosecutor and judge.”
Graves, 66 So.3d at 154 (citations omitted). This Court repeatedly has found that a judge who initiates constructive contempt proceedings has substantial personal involvement and must recuse himself. Graves, 66 So.3d at 153-54 (providing that “[the judge] was the complainant for alleged criminal contempt that occurred, at least in part, outside his presence[,]” and that “[the judge] should not have presided over Graves’s contempt proceeding”); In re Smith, 926 So.2d at 888 (“The citing judge must recuse himself from conducting the [constructive] contempt proceedings involving the charges.”) (quoting Cooper Tire, 890 So.2d at 869) (emphasis added); Terry v. State, 718 So.2d 1097, 1105, (Miss.1998) (“Because [the judge] was instrumental in the initiation of the constructive contempt proceedings, this Court holds that he should not have heard the contempt proceedings.”). It is undisputed that the chancellor initiated the contempt proceedings when he issued show-cause orders requiring that Appellants appear and demonstrate why they should not be held in contempt. As the proceedings were for constructive criminal contempt, we conclude that the chancellor was required to recuse himself from conducting them. His failure to do so violated Appellants’ due-process rights and warrants reversal of the contempt judgments.

*1216
B. Notice of Contempt Proceedings

¶ 11. The Mississippi Constitution provides that, “[i]n all criminal prosecutions the accused shall have a right ... to demand the nature and cause of the accusation....” Miss. Const, art. 3, §26 (1890). For indirect criminal contempt, this Court requires notice of the charges and the specific conduct alleged to be contemptuous and a hearing. See Purvis, 657 So.2d at 798 (“constructive contempt requires a specification of charges, notice and a hearing.”) (citing Wood v. State, 227 So.2d 288, 290 (Miss.1969)); Moulds v. Bradley, 791 So.2d 220, 225 (Miss.2001) (“Without notice of [constructive] criminal contempt sanctions, [the accused’s] due process rights were violated.”); Premeaux, 569 So.2d at 684 (“defendant must be afforded minimum due process rights” and “[d]ue process includes notice to the alleged contemnor that she was being considered for criminal contempt.”) (citing Mabry v. Howington, 569 So.2d 1165,1167 (Miss.1990), and Cook v. State, 483 So.2d 371, 375 (Miss.1986)). The chancellor issued orders in the underlying DHS cases notifying Appellants of show-cause hearings and instructing them to “be prepared to present evidence as to why they should not be found in contempt of court and sanctions, including incarceration and/or a fine, should be entered.... ” Thus, Appellants received a modicum of actual notice of the contempt proceedings.
¶ 12. However, the chancellor did not issue summonses to the proceedings. Criminal-contempt defendants are entitled to notice under Mississippi Rule of Civil Procedure 81(d), which requires service of process. Miss. R. Civ. P. 81(d)(2). This Court has explained that, “[although contempt proceedings ... often are filed in the same cause number and proceed with the underlying ... case, they are held to be separate actions, requiring new and special summons under Mississippi Rules of Civil Procedure 81.” Shavers v. Shavers, 982 So.2d 397, 402 (Miss.2008) (citation omitted); see Hanshaw v. Hanshaw, 55 So.3d 143, 146 (Miss.2011) (“Because contempt proceedings are distinct actions, they require notice consistent with Mississippi Rule of Civil Procedure 81(d).”). “In contempt proceedings, ‘[c]omplete absence of service of process offends due process and cannot be waived.’ ” Dennis v. Dennis, 824 So.2d 604, 609 (Miss.2002) (brackets in original) (emphasis added) (citations omitted). Thus, notice by the issuance of summonses under Rule 81 must occur before contempt proceedings are conducted. The failure to issue Appellants summonses for the contempt proceedings violated Appellants’ due-process rights and likewise warrants reversal.
CONCLUSION
¶ 13. We conclude that the contempt proceedings were for constructive (indirect) criminal contempt, and, therefore, the chancellor was required to recuse himself from the contempt proceedings and issue Rule 81 process giving Appellants notice of the criminal charges against them. As he failed to do so, the chancellor violated Appellants’ due-process rights. Accordingly, we vacate the contempt judgments of the Jackson County Chancery Court, remand the cases for entry of an order of recusal, and otherwise order proceedings consistent with this opinion.
¶ 14. VACATED AND REMANDED.
WALLER, C.J., CARLSON AND DICKINSON, P.JJ., LAMAR, KITCHENS AND KING, JJ., CONCUR. CHANDLER, J., CONCURS IN PART AND IN RESULT WITHOUT SEPARATE WRITTEN OPINION. PIERCE, J„ NOT PARTICIPATING.

. Four cases are consolidated in this appeal, all related to a chancellor's holding of owners of process-service companies and individual process servers (collectively “Appellants”) in contempt.

. The chancellor did not hold a show-cause hearing for Moon or hold him in civil contempt. Instead, he issued an order directing Young Williams to prepare a subpoena for Moon to appear and show cause why he should not be held in contempt for filing a false proof-of-service affidavit. Moon’s first appearance before the chancellor on the contempt charge was at the combined sentencing hearing.