# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2014-KM-00785-COA

ROBERT PATRICK TERRELL A/K/A ROBERT         APPELLANT
P. TERRELL A/K/A PATRICK TERRELL

v.

STATE OF MISSISSIPPI         APPELLEE

| | |
|---|---|
| DATE OF JUDGMENT: | 02/21/2014 |
| TRIAL JUDGE: | HON. ANTHONY ALAN MOZINGO |
| COURT FROM WHICH APPEALED: | JEFFERSON DAVIS COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | J.M. RITCHEY |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: LAURA H. TEDDER |
| DISTRICT ATTORNEY: | HALDON KITTRELL |
| NATURE OF THE CASE: | CRIMINAL - MISDEMEANOR |
| TRIAL COURT DISPOSITION: | CONVICTED OF INDIRECT CRIMINAL CONTEMPT AND SENTENCED TO SIX MONTHS INCARCERATION IN THE CUSTODY OF THE JEFFERSON DAVIS COUNTY SHERIFF OR ANOTHER COUNTY WITHIN THE FIFTEENTH DISTRICT |
| DISPOSITION: | REVERSED AND REMANDED - 06/02/2015 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE LEE, C.J., ROBERTS AND JAMES, JJ.**

**ROBERTS, J., FOR THE COURT:**

¶1. Robert Patrick Terrell appeals his conviction of indirect criminal contempt and the revocation of his bail on other charges. Terrell alleges that the trial judge committed error by failing to recuse himself from Terrell's contempt proceedings, and this, along with a lack

of service of process, violated his due-process rights. Additionally, Terrell argues that his conviction for indirect or constructive contempt is against the weight of the evidence. Finally, Terrell alleges that the trial judge abused his discretion and exceeded his authority by revoking Terrell's bond on a pending felony indictment after conviction for contempt.

¶2.     For reasons discussed below, we reverse and remand for a new trial.

## FACTS AND PROCEDURAL HISTORY

¶3.     Terrell was indicted in Jefferson Davis County on March 12, 2013, on twenty separate criminal offenses, including mail fraud, conspiracy to commit mail fraud, identity fraud, conspiracy to commit identity fraud, timber theft, conspiracy to commit timber theft, false pretenses, and conspiracy to commit false pretenses. On February 19, 2014, the day set for trial, members of the jury venire arrived for jury duty. However, the court reporter was ill that day, requiring a continuance of trial and jury selection. No jurors were sworn in, questioned, or issued any identification on February 19. The trial judge continued Terrell's trial until the next day, February 20, 2014, commanding the jury venire to return at 8:30 a.m. Terrell was not present in the courtroom at the time the trial judge dismissed the jurors. Upon dismissal of the jurors, two investigators from the district attorney's office followed the jury venire out in order to ensure no one had any improper contact with the venire members. As they exited the courthouse, the investigators spotted Terrell engaging in a brief, five to ten second conversation with two men in the parking lot. Investigators later identified the two men as members of the jury venire and reported the incident to the district attorney's office.

¶4. The next morning, on February 20, 2014, prior to the commencement of trial and jury selection, one of the gentlemen Terrell spoke to, Frecardo Ashley, contacted the circuit clerk and asked to be removed from the venire. Ashley requested his removal from the venire because he had received a telephone call from Terrell that morning. After this revelation and before proceedings began, an on-the-record conference was held between the assistant district attorneys (ADA), Terrell's attorney, and the trial judge. One of the ADAs informed the trial judge of the alleged conversation the day prior and requested that the trial judge immediately incarcerate Terrell until the conclusion of the trial in order to prevent jury tampering. The trial judge refused to immediately jail Terrell without a hearing but did indicate that there would be an investigation and formal hearing on the matter. The trial judge then asked for Ashley to be brought before the court, sworn in, and questioned regarding his relationship with Terrell. After questioning by the State, the trial judge excused Ashley for cause. The trial judge then brought the jury venire back into the courtroom, swore them in, and began qualifying the jury.

¶5. After excusing several venire members, the trial judge then inquired as to whether any venire members knew Terrell. Stephen Abram, one of the men the investigators saw Terrell speak to the day before, told the court he was familiar with Terrell from church. The trial judge asked Abram if he had any contact with Terrell lately. Abram responded that their only contact had been exchanging a, "Hey, how you doing?" Abram also acknowledged that he had seen Terrell in and around the courthouse. However, he denied having a conversation with Terrell. The court then held a conference outside the presence of the jury, wherein the

3

trial judge, upon his own motion, called the investigator who allegedly saw Terrell conversing with the venire members. Investigator Darrell Perkins was then sworn in and testified that he witnessed Terrell greeting and speaking to Abrams and Ashley outside the courthouse, as though the three men were friends. Once the trial judge concluded his questioning of Investigator Perkins, he then issued "a show[-]cause order for a hearing to be held to determine why [Terrell] should not be held in contempt of court." The trial judge also declared that the type of alleged contempt was indirect (or constructive), as it had occurred outside the presence of the trial court. After a challenge to the charge by Terrell's attorney, the trial judge stated that the State was not "bringing the charges," but that the court was issuing an order. The State then noted that it had made an off-the-record, oral motion for contempt. Terrell's attorney objected to having the hearing the following day, stating that Terrell was owed service of process under Mississippi Rule of Civil Procedure 81, as well as noting the impracticality of preparation on such short notice. After noting the objections, the judge dismissed the jury panel based on the allegations of jury tampering and contempt.

¶6.     Once the jury had been dismissed, the trial judge ordered that a hearing be held the following morning to determine whether Terrell was in indirect contempt of court. The judge stated that his oral, on-the-record show-cause order would serve as Terrell's notice of the charges against him, unless his attorney could show him caselaw requiring the court to wait any longer. The trial judge then ordered the circuit clerk to issue subpoenas to Abram, Ashley, and the two investigators from the district attorney's office. When Terrell's attorney inquired  as to his ability to sufficiently subpoena witnesses for the contempt hearing, and

4

again objected to the setting, the court stated, "[I]f you can show me some caselaw, I'd be happy to reconsider and wait seven days. But there is none. . . . We're going forward." The ADA then interjected in an attempt to answer Terrell's attorney's fears of inadequate time to prepare, but the trial judge stated:

> You don't have to answer that. I mean I've addressed it and really I can sit here all morning listening to back and forth. But based on what I've heard today and seen, I am in total complete search for what the law and the right thing to do is. And I know one thing not to do is to continue to be talked out of the leadership that I know is right in these matters.

With that statement, he concluded the day's proceedings.

¶7. At 4:00 p.m. on February 20, the State electronically mailed a "Petition to Find Robert Patrick Terrell in Contempt of Court" to Terrell's attorney. In that petition, the State alleged that Terrell violated Uniform Rule of Circuit and County Court 3.04, which provides: "Except as provided by these rules, no person or attorney for the person involved in any case may communicate with or offer any favor, however slight, to any person on the jury venire." In support, the State alleged in the petition that Terrell had spoken with Ashley and Abram, members of the jury panel, outside the courthouse on February 19. The State also alleged that Terrell contacted Ashley by telephone on the morning of February 20, which intimidated Ashley. These action were alleged to be "patently contemptuous" and "calculated to curry favor . . . and influence the jury panel members to [Terrell's] benefit and favor," a violation of Rule 3.04. This petition was filed with the circuit clerk the morning of February 21, 2014, prior to the commencement of Terrell's contempt hearing.

¶8. That same morning, February 21, 2014, Terrell's attorney cited *In re McDonald*, 98

So. 3d 1040 (Miss. 2012), to again object to the lack of process and adequate notice for Terrell. He also objected to the that the trial judge's active participation in the initiation of the contempt proceedings and asked that the trial judge recuse himself. The State objected, claiming the trial court did not initiate the contempt hearing, but rather, it was brought by the State, which had filed a petition with the court that morning. The contempt hearing then began.

¶9. Investigator Perkins testified that on February 19, 2014, he witnessed Terrell briefly speaking with two gentlemen, who were later identified as Abram and Ashley. These two men were not identified by any badge or insignia making known they were jurors. He also testified that he received a call from Ashley on February 20, 2014, in regard to a phone conversation Ashley had received from Terrell. Much of his testimony was a repetition of his testimony during the trial judge's examination. After the conclusion of Investigator Perkins's testimony, Investigator Moore was sworn in and testified to the same statements Investigator Perkins previously made.

¶10. Clint Langley, the circuit clerk, testified regarding Terrell's attempt to receive a copy of the juror list from the clerk's office the week prior to his trial. Langley testified that Terrell had called the clerk's office seeking a copy of the juror information sheet, something Langley had never been asked. Unsure of how to proceed, Langley contacted the trial judge for advice. Langley testified that he did not give Terrell the requested information because he was directed not to by the trial judge. In his closing remarks, the trial judge confirmed that he indeed ordered the clerk's office not to provide Terrell with a list of jurors, noting he

believed such a request was "inappropriate."

¶11. Abram then testified that he briefly spoke with Terrell upon leaving the courthouse, but stated the conversation was nothing more than a greeting. Abram did not know to whom he was speaking. Next, Ashley testified that he, along with Abram, briefly greeted Terrell in the parking lot outside the courthouse. Ashley testified that he knew Terrell previously, as he had worked occasionally for Terrell and hoped to again in the future. Ashley also testified that he had received a phone call from Terrell the morning of February 20, 2014, in which Terrell said, "[D]on't be late. [I]'ll talk to [you] this afternoon." Ashley stated that he did not say anything to Terrell in response, and he did not really know what the call meant. However, he did start feeling uncomfortable because he had a prior relationship with Terrell, and he did not want to be a juror on the case. Ashley stated that he did not feel intimidated, threatened, or afraid. He testified that he could not be a fair and impartial juror, and he thought it would not be fair to any of the parties should he be chosen to serve.

¶12. At the conclusion of all testimony, the trial judge issued his ruling. Noting Ashley's testimony about the phone call from Terrell and his discomfort about it, the judge relied upon *Kitchens v. State*, 293 So. 2d 815 (Miss. 1974), to find that Terrell's behavior brought the authority of the trial court and the administration of justice into question. The trial judge also declined to recuse himself due to personal involvement, denying any such allegation. Near the conclusion of his comments, the trial judge noted:

> The evidence admitted through witness testimony establishes the defendant's contact is contemptuous. If any doubt about the matter of whether the State met its burden of proof [exists], that doubt is removed by the defendant's actions of February the 4th, when I the judge, my staff attorney

7

Evans, the Circuit Clerk of Marion County, and the Constable Paul Barber of Marion County went to lunch innocently, February 4th, at a local restaurant. And after we ate, we left and realized that someone had paid for our lunch.

. . . .

So if there was any doubt about what his intentions were, I think that doubt is removed by the fact that I have determined since all these issues were raised that it was Robert Patrick Terrell that paid for four of our lunches on February 4th.

The judge then found Terrell guilty of contempt of court and ordered him to serve six months in the county jail, as well as pay a $500 fine. The judge also sua sponte revoked Terrell's $80,000 bond on his pending charges and remanded him to the custody of the Jefferson Davis County Sheriff.

## ISSUES

¶13. On appeal, Terrell presents four issues. Terrell alleges that it was error for the trial judge not to recuse himself due to his close personal involvement with the case. Terrell further alleges that the lack of adequate notice, per Rule 81, violated his due-process rights. Terrell also argues that the State did not meet its burden of proof in order to be found guilty. Finally, Terrell argues that the revocation of bail by the trial judge was an abuse of discretion.

¶14. Because we find reversible error on Terrell's first issue, we conclude that the remaining issues presented are either unlikely to occur on retrial or are rendered moot by our decision. Thus, we decline to address these issues.

## STANDARD OF REVIEW

¶15. We apply a de novo standard of review when reviewing procedural issues raising questions of law. *Corr v. State*, 97 So. 3d 1211, 1213 (¶5) (Miss. 2012).

**ANALYSIS**

¶16.    Terrell argues that the trial judge should have recused himself from the contempt proceedings due to the judge's personal involvement in investigating and bringing the charges and due to his bias towards Terrell.  When the trial judge becomes substantially involved in criminal contempt proceedings, it is necessary for the judge to recuse himself in order to protect a defendant's due-process rights.

¶17.    The Mississippi Supreme Court has stated:

> [I]n cases of indirect or constructive criminal contempt, where the trial judge has substantial personal involvement in the prosecution, the accused contemnor must be tried by another judge. . . . [E]xamples of substantial personal involvement in the prosecution warranting recusal include cases where the trial judge acts as a one-man grand jury; where the trial judge is instrumental in the initiation of the constructive-contempt proceedings; and where the trial judge acts as prosecutor and judge.

*Graves v. State*, 66 So. 3d 148, 154 (¶24) (Miss. 2011) (citations and internal quotation marks omitted).  Where a judge has initiated indirect contempt proceedings, particularly when a show-cause order has been issued, a judge must remove himself from the proceedings.  *Id.* at 154 (¶¶23-24); Corr, 97 So. 3d at 1215 (¶10).  Similarly, "[w]here the judge acts as prosecutor and judge, the only checks against potential bias are his own capacity for objectivity in such matters and painstaking appellate review.  Hence the roles of prosecutor and judge should, as much as is reasonably practicable, be kept separate in constructive criminal contempt proceedings."  *Cook v. State*, 483 So. 2d 371, 376 (Miss. 1986).

¶18.    In the present case, some factual confusion exists as to who actually initiated the

contempt proceedings against Terrell. On February 20, 2014, the trial judge conducted voir dire of some venire members, including Abram, to whom Terrell allegedly spoke. After voir dire concluded, the judge then questioned Investigator Perkins under oath as to the alleged interaction between Terrell and the two jury members. At the conclusion of his investigation, the trial judge stated: "With all of these issues raised the Court has serious concern over the honesty of all the jurors in the venire and hereby issues a show[-]cause order for a hearing to be held to determine why the defendant . . . should not be held in contempt of court." Terrell's attorney later asked for clarification as to when the State would "get specific charges typed up," to which the trial judge responded, "They are not bringing the charges. . . . [T]hey are not bringing the charges. The Court is issuing an order." However, shortly after this statement, the ADA said:

> For clarification of the record, the State did bring this motion for contempt. It was not on the record. It was in chambers[,] and it was prior to the commencement of opening court this morning. So I just wanted to clarify that for the record, that we did bring the motion for contempt.

Prior to the beginning of the contempt proceedings on February 21, 2014, the State filed a written petition for contempt against Terrell. Then, after the trial judge found Terrell guilty of indirect contempt, he issued an order reflecting his findings. The order read, in part, "This cause came before the Court on the 21st day of February, 2014, for a hearing *pursuant to the Court's order for the defendant to show cause* why he should not be held in contempt." (Emphasis added).

¶19. In its brief, the State argues that it is responsible for bringing the contempt charges against Terrell, as evidenced by its motion filed the day of the hearing and by the ADA's on-

the-record statement at the hearing of February 20. However, Terrell argues that the judge's own statements during the hearing, along with his order proclaiming the hearing to have been pursuant to the court's order, together create the "substantial personal involvement" that is forbidden. While we cannot say with certainty whether the State's ore tenus motion or the trial judge's show-cause order are responsible for the contempt proceedings, at the very least, the situation is muddled enough to call the trial judge's involvement into question. Even assuming, arguendo, that the trial judge did not initiate the proceedings, his investigation into the contemptuous allegations, his interrogation of Investigator Perkins, and his personal knowledge and involvement gave him substantial personal involvement in the prosecution.

¶20. Additionally, the trial judge had prior personal knowledge of Terrell that he impermissibly used in making his determination of guilt. Under Canon 3E(1) of the Code of Judicial Conduct,

> Judges should disqualify themselves in proceedings in which their impartiality might be questioned by a reasonable person knowing all the circumstances or for other grounds provided in the Code of Judicial Conduct . . . , including but not limited to instances where:
>
> (a) the judge has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding[.]

The comment to the rule advises a judge to "disclose on the record information that the judge believes the parties or their lawyers might consider relevant to the question of disqualification, even if the judge believes there is no real basis for disqualification." The standard for determining whether a judge should have disqualified himself is an objective one: would a reasonable person, knowing all the circumstances, have doubts about his

11

impartiality? *In re Conservatorship of Bardwell*, 849 So. 2d 1240, 1247 (¶20) (Miss. 2003) (citing *Bryan v. Holzer,* 589 So. 2d 648, 654 (Miss. 1991)). A presumption exists that a sitting judge is qualified and unbiased. In order to overcome that presumption, there must be "a reasonable doubt" about the judge's bias. *Bardwell*, 849 So. 2d at 1247 (¶20) (quoting *Bryan*, 589 So. 2d at 654).

¶21. When the trial judge issued his verdict, he stated:

> If any doubt about the matter of whether the State met its burden of proof [exists], that doubt is removed by the defendant's actions of February the 4th, when I the judge, my staff attorney Evans, the Circuit Clerk of Marion County, and the Constable Paul Barber of Marion County went to lunch innocently, February 4th, at a local restaurant. And after we ate, we left and realized that someone had paid for our lunch.

> When we inquired who it was, nobody seemed to know. And when I continued to pursue and demand who bought my lunch, the remark was made[,] ["]Pat.["] I didn't know who Pat was at the time . . . . I never knew Robert Patrick Terrell as Pat. I just knew him as Defendant Terrell.

> So if there was any doubt about what his intentions were, I think that doubt is removed by the fact that I have determined since all these issues were raised that it was Robert Patrick Terrell that paid for four of our lunches on February 4th.

This prior knowledge of Terrell, which normally would have created a bias against him, should have been disclosed on the record to the parties prior to the commencement of the contempt proceedings. The mere fact that the trial judge used those outside, prior events to support his belief that Terrell had ill intentions is proof enough that he should have disclosed this information. Additionally, the trial judge had personal knowledge that Terrell had attempted to get a list of potential jurors; he even made the decision to instruct the clerk not to furnish the list to Terrell. The prosecution used this attempt as evidence of Terrell's evil

intent during the contempt proceedings. His involvement with deciding not to give Terrell the jury list gave him personal knowledge of disputed facts regarding Terrell's intent. These two out-of-court incidents created a preconceived determination, perhaps not of contempt, but certainly of Terrell's ill intent. Furthermore, upon finding Terrell guilty of contempt, the trial judge revoked his bail sua sponte, without any prompting or request from the State. Regrettably, we must conclude that a reasonable person, knowing all of these circumstances, would clearly have a reasonable doubt about the trial judge's ability to be impartial.

¶22. These doubts as to impartiality, coupled with the trial judge's substantial personal involvement with bringing the contempt proceedings, require a reversal of the trial judge's verdict of guilt. We remand for a new trial.

¶23. **THE JUDGMENT OF THE CIRCUIT COURT OF JEFFERSON DAVIS COUNTY IS REVERSED, AND THIS CASE IS REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. ALL COSTS OF THIS APPEAL ARE ASSESSED TO JEFFERSON DAVIS COUNTY.**

**LEE, C.J., IRVING AND GRIFFIS, P.JJ., BARNES, ISHEE, CARLTON, MAXWELL, FAIR AND JAMES, JJ., CONCUR.**